No. 17,693.

## MONTGOMERY v. OLDHAM.

ELECTIONS.—*Ballot Prepared by Poll Clerks.—Legality.—Inability of Elector to Read.*—A ballot prepared by the poll clerks at the request of an elector who is unable to read and write intelligently is legal, although he states that he can read, under section 6244, R. S. 1894, providing that any elector who "declares" that from his inability to read the English language he is unable to mark his ballot, may have the same prepared by the poll clerks.

SAME.—*Tie Vote.—When Election Will Not Be Set Aside.—Case Overruled.*—An election will not be set aside because a tie vote is produced by adding to the opposing candidate a vote rejected by the election board, under section 6313, R. S. 1894, providing that an election shall not be set aside for irregularity or malconduct of such board, unless the contestee was thereby caused to be declared elected when he had not received the "highest number" of votes, nor for illegal votes unless the number thereof taken from him would reduce his number of legal votes "below" the number given to some other candidate. *Gimble* v. *Green*, 134 Ind. 628, overruled in part.

From the Fayette Circuit Court.

*D. W. McKee, J. I. Little* and *H. L. Frost*, for appellant.

*R. Conner* and *J. M. McIntosh*, for appellee.

MCCABE, J.—The appellant and one Samuel H.

Helvie were opposing candidates for the office of township trustee of Jennings township in Fayette county in this State, at the November election in 1894. The election board counted for appellant ninety-nine votes, and for said Helvie ninety-eight votes, and issued a certificate of election to the appellant.

Within the time allowed for contest, the appellee, who was a voter in said township, began proceedings to contest the election of said appellant, before the board of commissioners of Fayette county.

On the trial of the contest, the board of commissioners found that there was a tie vote between the appellant and said Helvie, adjudged and declared that neither of them was elected, and adjudged the costs against the appellant, Montgomery. From this judgment he appealed to the Fayette Circuit Court, where a trial resulted in a special finding by the court, on which it stated its conclusions of law favorable to the view taken by the commissioners' court. The conclusion was that the election had resulted in a tie, and a judgment was rendered setting aside the certificate of election issued to the appellant, and for costs in favor of the appellee, from which this appeal is prosecuted.

The errors assigned call in question the correctness of the conclusions of law.

It appears from the facts found by the court, that there were but two candidates for the office of trustee of Jennings township, the appellant, Montgomery, who was eligible, and said Helvie, candidate for the same office, and that he was also eligible, and that there was but one voting precinct in said township; that a successor to the then incumbent of said office was to be elected at said election, the names of both candidates being properly printed on the local ballot in the respective lists of candidates of the respective parties, for said

township; that only 201 ballots were cast in said township at said election; that said election board counted for said Helvie ninety-eight votes, and for said Montgomery ninety-nine votes, and rejected and refused to count for either candidate four of said township ballots.

The trial court found such facts and stated such conclusions of law thereon relative to three of the four rejected ballots as show that they were illegal and properly rejected. No question is made as to that ruling by either party.

That leaves for consideration the legality of but two ballots or votes, one rejected ballot and one ballot that was counted. No question is made as to any other counted ballot.

The court finds that one of them was voted by one Clinton H. Parker; the other facts found concerning which and conclusions of law thereon, show that he, at the time, was a qualified voter of the township. It is further found that said Parker went into the election room where said election was held and requested the poll clerks to prepare his ticket for him; that he was not physically disabled, and when interrogated by one of the judges of said election he stated that he could read. Without making any showing of any necessity therefor other than to state that he had no confidence in his own ability to properly stamp his ticket, on his request by direction of the inspector, the poll clerks of such election stamped his ticket on the square containing the eagle, being the republican device, and his ticket thus stamped was placed in the ballot box and counted as one vote for said Helvie; that, in fact, said Parker was at the time he so voted unable to read and write the English language intelligently or to read his said ballot, but had not so declared to said election board. The court concluded, as matter of law, that such vote was legal,

and properly counted for Helvie, the republican candidate. We are of opinion that this conclusion was correct.

The appellant's contention is that the facts above stated bring this vote within the provisions of section 45 of the election law providing "That if any elector shall show his ballot, or any part thereof, to any other person after the same shall have been marked, so as to disclose any of the candidates voted for, such ballot shall not be deposited in the ballot box." R. S. 1894, section 6241 (E. S. 1367).

It is provided in the forty-eighth section that "Any elector who declares that by reason of physical disability, or inability to read the English language, he is unable to mark his ballot, may declare his choice of candidates to the poll clerks, who in the presence of the elector and in the presence of each other shall prepare the ballots for voting in the manner hereinbefore provided, and on request shall read over to such elector the names of the candidates as marked." R. S. 1894, section 6244 (E. S. 1370).

Appellant concedes that the provision just quoted applies to cases therein specified, but contends that it does not apply to the cases made by the facts above recited; because the voter in this case did not declare to the board that by reason of physical disability or inability to read the English language, he was unable to mark his ballot.

This position can only be maintained by ignoring the clear intent of the statute by a too strict adherence to its literal words. It is the fact of physical disability or inability to read the English language that entitles the voter to the services of the poll clerks to prepare his ballot according to his direction, and not his declaration of the fact.

That is a method the statute directs to be pursued in communicating a knowledge of the fact to the election board by the unable voter. But suppose when the voter comes into the election room the officers can all see that he has neither hands nor arms, and, so seeing, the poll clerks at once proceed to prepare his ballot, asking him for whom and what ticket he wants to vote, and receiving his answers, mark it accordingly, and he votes it without having made any declaration as to his disability. On a contest over the validity of such vote, it being established that his want of hands and arms made him wholly unable to mark his ballot goes for nothing according to appellant's counsel. He must lose his vote because he did not declare the fact to the election officers, which they already knew. Such a construction would require substance to yield to a shadow.

It may be in this case the election officers well knew the voter, Parker, to be wholly unable to read the English language, and therefore unable to mark his ticket so as to express his choice.

The court finds that that was his condition. It was the condition of inability that the Legislature intended to form the cause for an exception to the general rule that the voter must not show his ballot so as to disclose the names of any candidate voted for, and not the mere declaration of such inability. Otherwise the whole purpose and object of the secret ballot law might be evaded and frittered away. Many voters might make the declaration of inability to prepare or mark their tickets when such declaration was wholly untrue and be known to the election board to be untrue. And if the declaration is controlling instead of the fact, all such voters can thus be enabled to show their ballots to others as finally prepared and voted. That part of the section requiring the voter to make the declaration of his ina-

bility is directory merely and not mandatory. See *Parvin* v. *Wimberg*, 130 Ind. 561-566 (15 L. R. A. 775); *Bechtel* v. *Albin*, 134 Ind. 193; *Zeis* v. *Passwater*, 142 Ind. 375.

This leaves the only vote that was rejected by the election board, about which there is any controversy, for consideration. The circuit court, as matter of law upon the facts found, concluded that that vote ought to have been counted for Helvie, which made him an equal number of votes with the contestee, the appellant, namely, ninety-nine, and thereupon adjudged that neither candidate was elected, and that appellant's certificate should be set aside and annulled, and that the appellee recover costs. The facts found concerning that ballot are that it had been stamped by the voter on the small square to the left of each and all the names of the one list of candidates upon such township ballot, including the name of Samuel H. Helvie, and was not stamped on the square inclosing the device at the head of such ticket, or anywhere else.

For this reason it is contended that the ballot contained a distinguishing mark which justified the election board in rejecting and refusing to count it for Helvie. The ground on which this contention is rested is, that a proper construction of the secret ballot law is that it provides for but one way of voting a straight ticket, that is for the whole list of candidates where the list is full, and that method is by stamping the square containing the device at the head of such list or ticket. On the other hand, it is contended that a proper construction of that law is that it provides two methods of voting a straight ticket; one by stamping the square inclosing device and stamping nowhere else when the list is full, and the other by stamping each square to the left of the

name of each candidate on the list and nowhere else, as was done in this instance.

Assuming, without deciding, that both methods of voting are authorized by the statute, and that the vote here in question was wrongly rejected, and should have been counted for Helvie by the circuit court, as it was counted, thus producing a tie between the contestee (the appellee) and Helvie, the only two candidates for the office, there is another reason why the contest here must fail, viz: One section of the statute concerning contests reads thus : "No irregularity or malconduct of any member or officer of a board of judges or canvassers shall set aside the election of any person, unless such irregularity or malconduct was such as to cause the contestee to be declared elected when he had not received the highest number of legal votes; nor shall any election be set aside for illegal votes, unless the number thereof given to the contestee, if taken from him, would reduce the number of his legal votes below the number of legal votes given to some other person for the same office." R. S. 1894, section 6313 (R. S. 1881, section 4757). It is the last clause of the section quoted that the appellant relies on. But the appellee contends that it is not applicable to the case at bar, because there was no illegal votes taken from the contestee, but the result was produced by adding a vote to the opposing candidate, which the election board had rejected and refused to count for him, and which vote made the tie. It is conceded by the learned counsel that the express words of the clause forbid the setting aside of any election on a contest for illegal votes, if the number thereof taken from the contestee produces a tie; that is, if it does not reduce the contestee's number below the num-

ber of legal votes given to some other person for the same office.

Nothing less than this could be conceded with any show of candor and fairness.

It seems to be a clear and unavoidable conclusion that the policy of the statute quoted is to prohibit a contest or the setting aside of an election in the cases to which the language of the section applies, where such contest results only in producing a tie or in showing that some other person has an equal number of legal votes with the contestee.

This policy is not only wholesome, but is founded on the best of reasons.   When there is a tie, when two or more have the highest and an equal number of votes, it is of such small interest to the public which of them shall fill the office, that another section of the same statute makes the right of either to depend upon so slight a thing as chance, the toss of a copper, the drawing of cuts or lots or other act by which the right to the office is made to depend on what happens without human design or forethought, chance, accident, hazard.   R. S. 1894, section 6292 (R. S. 1881, section 4936).

It is perfectly clear and plain that a matter about which the public can have no interest, namely, which of the two or more candidates with an equal number of legal votes shall fill the office, and a matter about which neither of them can have a particle of interest, ought not to become the subject of litigation in the courts.   The only person in the territory embraced in the election district in such a contest that had the slightest interest in its success is the present incumbent. In this case neither of the candidates is that incumbent. If a contest is to be allowed to annul the certificate of the contestee because another received an equal number of legal votes, then the result must be to allow the present

incumbent to hold another term, or until another election, against which every vote in the township was cast. It therefore seems clear that the provision is founded on sound public policy.

It remains to inquire whether it applies to the present case. There can be no doubt that the same policy calls for the application of the rule to a case falling within the literal words of the provision, applies equally to the facts of the present case.

The only question is, did the Legislature intend to make any difference in the two classes of cases? There can be no good reason suggested why the Legislature should forbid the setting aside of an election on a contest for illegal votes unless the number thereof given to the contestee, if taken from him, would reduce the number of his legal votes below the number of legal votes given to some other person for the same office; and in the same provision permit the contestor to wage a contest and get the election of the contestee set aside because some other person has an equal number of votes; which result is produced by restoring to that person a vote or votes which the election board had rejected and refused to count for him, because they erroneously supposed it was an illegal vote. It must have been the intent to prevent a contest or the setting aside of an election on the question of the legality of the votes where it results only in producing a tie of legal votes for two or more candidates who have the highest and an equal number of votes in any case.

In addition to the reason already given in support of the policy of the statute, that no one but the present incumbent can have any interest in the success of such a contest, it is to be observed that it can never be known that the person to whom the election board has awarded the certificate of election is not the very person on whom

the lot would have been cast had they made no mistake as to legality of votes, and the tie had resulted by their count legally and correctly made. There might be some excuse and good policy in permitting such a contest to be waged if it could be judicially ascertained that the contestee is not the person on whom chance would have cast the lot had the board correctly decided the legality of the votes involved producing before them a tie, and thereupon have determined the matter by lot.

But it is contended that the first clause of the section authorizes a contest in any case when the contestee has not received the highest number of legal votes. But that is a misconception of its plain language. Both clauses of the section are in the negative and are designed to prevent contests in certain cases, not to authorize them in any case. But if it were otherwise, such a construction would bring the two clauses in direct conflict with each other. That would be against all rules of interpretation. The construction of the first clause must be along with that of the second, and by the language of the latter the former is necessarily cut down and limited, or qualified in the literal force of its words to some extent, or the extent to which their literal meaning might be carried, as appellee's learned counsel impliedly concede.

Therefore, the meaning of the first must be held to be that the irregularity or malconduct specified shall not set aside the election unless it was such as to cause the contestee to be declared elected when he had not received the highest number of legal votes : *Provided*, When the effect produced by such irregularity or malconduct is removed, and the same is rectified, it produces a tie between the contestee and some other person.

This construction of the section is much strengthened by a consideration of the latter clause of section 6317,

R. S. 1894 (R. S. 1881, section 4761), which reads as follows:

"And if it be proved that any other person than the contestee has the highest number of legal votes, such board shall declare such person elected, and certify the same to the proper officer." No provision for the success of the contest is made where it turns on the number of votes except in the one case, and that is, where some other person than the contestee has received the highest number of legal votes. *Gimble* v. *Green*, 134 Ind. 628, is cited by appellees as contrary to this view.

In that case the attention of this court was not called to the statute we have been considering, and counsel in the case on both sides seem to have ignored its existence, though it seems it would have been in point and controlling in the case.

The case, therefore, to the extent that it is in conflict with the conclusion here reached must be overruled.

It follows that the circuit court erred in its conclusions of law.

The judgment is reversed, with instructions to restate the conclusions of law in accordance with this opinion, and enter judgment accordingly.

Filed December 12, 1895.