Filed October 29, 1895.

---

No. 17,576.

### ZEIS v. PASSWATER.

| 142 | 375 |
| 143 | 39 |
| 142 | 375 |
| 155 | 43 |
| f156 | 357 |

ELECTIONS.—*Evidence.*—*Ballots Properly Preserved.*—*Memorandum Omitted from Tally Sheet.*—The omission from the tally sheet of the memorandum required by section 6248, R. S. 1894, as to disputed ballots, does not preclude a ballot preserved in the manner provided by that section for the preservation of disputed ballots, from admission in evidence.

SAME.—*Ballot.*—*Distinguishing Mark.*—A distinct mark, as with a pencil, about one-fourth inch in width and about five-sixteenths inch in length, on one of the large squares of a ballot, is a distinguishing mark within the election law of this State. (See note at end of opinion.)

SAME.—*Ballot.*—*Distinguishing Mark.*—That the impression of the stamp within the square on a ballot, containing the voter's party

emblem, is somewhat blurred, as if made by a tremulous hand, does not require the exclusion of the ballot as containing a distinguishing mark, under the election law of this State.

SAME.—*Ballot.*—*Distinguishing Mark.*—Two entirely separate and distinct impressions of the stamp within the square, on a ballot, containing the emblem of the voter's party constitute a distinguishing mark within the election law, invalidating the ballot.

APPELLATE PROCEDURE.—*Elections.*—*Evidence.*—*Original Ballots.*—*When Part of Record.*—Original ballots introduced in evidence accompanying and properly identified by the longhand report of the evidence incorporated into the bill of exceptions, will be treated by the appellate court as embraced within, and constituting a part of, such report.

From the Hamilton Circuit Court.

*T. J. Kane, R. K. Kane, J. A. Roberts* and *M. Vestal,* for appellant.

*J. F. Neal, W. Fertig* and *H. J. Alexander,* for appellee.

HACKNEY, J.—The appellant and the appellee were opposing candidates at the November election in 1894, for the office of township trustee. Upon the face of the election returns, the appellant received 197 votes and the appellee 196 votes, the former being declared elected. The appellee, before the board of county commissioners, contested the election of the appellant and obtained the decision of said board that he, the appellee, had received the highest number of legal votes. From that decision this appellant appealed to the circuit court, where, upon a trial of the issue, it was adjudged that each of said candidates had received an equal number of votes, and therefore that neither had been elected. The questions here involved relate to the validity of ten disputed ballots, nine of which were rejected by the election board of the east precinct and one was counted, in the west precinct, for the appellee. Of the nine rejected ballots,

the circuit court counted four for the appellee and three for the appellant, rejecting two ballots of the five ballots stamped within the square containing the emblem of the party upon whose ticket the appellant was a candidate. The tenth disputed ballot, or that which was counted by the election board for the appellee, was held by the court not to be admissible in evidence. It will be seen, therefore, that, conceding the seven disputed ballots counted by the court to have been valid, if either of the two ballots rejected by the court was valid, or if the ballot not admitted in evidence was admissible and was invalid, the appellant would prevail by a majority of one, while if both rejected ballots should have been counted his majority would have been two, and if both rejected ballots were invalid, and that excluded from the evidence was admissible and was invalid, the appellant would have received 200 legal votes and the appellee 199 legal votes. Of the seven ballots counted there is little question. The four stamped within the square containing the emblem of the appellee's party each contained but one impression of the stamp. That impression, however, was, in one instance, not very clear and distinct, yet discernible, while in each of the others it was somewhat blurred, as if made by a tremulous hand. Of the five stamped within the square containing the emblem of the appellant's party three were of the same character as the three last above described, while the other two contained each two entirely separate and distinct impressions of the stamp. These, it is conceded, were the two rejected by the circuit court. They were invalid as containing distinguishing marks, and were properly rejected. *Sego* v. *Stoddard*, 136 Ind. 297 (22 L. R. A. 468). The seven counted contained no distinguishing mark. If, in preparing the ballot, the voter manifestly endeavors in

good faith to comply with the requirements of the law, he should not suffer the loss of his vote. *Bechtel* v. *Albin*, 134 Ind. 193. Where, however, in the preparation of the ballot, there is such departure from the strict letter of the law, as that if purposely done, the ballot could be known by the voter, after casting it, such departure distinguishes the ballot within the meaning of the law, and this is true, even if the departure is made innocently. In our opinion the slight variation from the placing of the stamp with such precision as to make a single perfect impression was not fatal to these ballots.

To this point we have concurred with the trial court in concluding that upon the returns, adding the nine rejected ballots, each candidate had two hundred votes. It now remains but to determine whether the court erred in holding that the tenth ballot was not competent evidence, and whether the ballot was valid. The tally sheet of the west precinct was admitted in evidence. It contained a memorandum that five township ballots were mutilated and destroyed, but it contained no memorandum of disputed ballots. The appellant introduced in evidence the envelope in which the seals and alleged disputed ballots were contained. It was indorsed as follows :

"For marked, mutilated or otherwise defective ballots and seals of ballot packages, as required by section 52, election law.

"To the county clerk : This envelope contains the seals and one disputed ballot, marked : 'Mutilated or otherwise defective ballots.' The condition of seals of ballot packages, at the time of opening same, was good, as indicated by the inclosed seals.

"AARON SHOEMAKER, Inspector,

"Clarksville Precinct, West Wayne Township."

After the introduction of this certificate, it was proven by the evidence of a poll clerk, that the ballot in question was considered by the election board and was counted. It was then proposed to be proven by said witness that this ballot was taken from the ballot box in the regular course of the counting; that when so taken from the ballot box two members of the board objected and protested against the counting of the ballot, and that over such objection and protest the ballot was counted for the appellee; that by agreement of the members of the election board said ballot was placed in the disputed ballot envelope and was certified to the clerk of the circuit court. Upon objection by the appellee, the offered evidence was rejected.

It was further offered by the appellant to prove by said election clerk, by the clerk of the circuit court, and by the county auditor, that the envelope containing said ballot and the seals had been regularly deposited by the election inspector, with the county clerk, and had passed to the auditor, and had come to the lower court at the trial, from the auditor, and that the ballot offered on the trial was the ballot considered by the election board. This offer was objected to by the appellee and the objections sustained. The ballot in question was then offered in evidence, and was rejected by the court. It was so stamped as to constitute a vote for the appellee, but, besides one or two very delicate lines from imperfections in the paper, or made with a pencil, it showed, within one of the large squares, a distinct marking, as with a pencil, about one-fourth of an inch in width and about five-sixteenths of an inch in length. This latter marking would constitute a distinguishing mark, within the rule already announced, and would render the ballot invalid. Questions are discussed as to the sufficiency of the inspector's certificate of the alleged dis-

puted· ballot, without a memorandum thereof upon the tally sheet, and as to the admissibility of parol evidence to trace and identify the ballot, notwithstanding the omission of such memorandum.

It is provided by statute (R. S. 1894, section 6248 ; Elliott Sup., 1374) that "Any ballot which shall bear any distinguishing mark or mutilation shall be void and shall not be counted :   *   *   *Provided, however,* that on  protest of any· member  of the board such ballot and all disputed ballots shall be preserved by the inspector, and at the close of the count placed with the seals of the ballot packages in paper bags, securely sealed, and so delivered to the clerk of the county with notification to him of the number of ballots so placed in such bags, and of the condition of the‚ seals of the ballot packages.    The poll clerk shall also record on the tally-sheets, memoranda of such ballots and the condition *   * of the ballot packages, and in any contest of election such ballots and seals may be submitted in evidence."

Besides the declaration of the invalidity of certain ballots,· this statute provides a method of securely preserving such ballots for evidence in contests.    The ballot in question was void, and should not have been counted for the appellee.    In counting it the board violated a mandatory provision of the statute.    By counting it for the appellee he would be given an office to which he was not elected by a majority of the legal votes cast, and the appellant would be deprived of an office to which he was elected by a majority of the legal votes.    This result, it is contended, must prevail because of the failure, innocently we must presume, of the poll clerk to record on the tally sheets a memorandum of such ballot.    If this result may be enforced, the legal choice of the voters of a precinct may be

defeated either by the unintentional or the willful omission of an official duty devolving upon a member of the election board.    We cannot believe that the Legislature intended that the will of the legal voters should be thwarted by such an omission.

That the disputed ballot shall not be destroyed, but shall be preserved for judicial investigation, is a duty primarily resting upon the inspector.    He takes charge of it, places it in the bags with the seals, securely seals the bag, indorses upon that a notification to the county clerk of the number of ballots it contains, and then delivers the bag to said clerk.    The memorandum which the poll clerk is required to make answers as a check, to some extent, upon the inspector and the county clerk against substituting other ballots for any that may be disputed.    The seals upon the bag aid the inspector in detecting any change of the ballots after they have passed out of his hands.    These are precautionary measures, and do not deny a resort to parol evidence to support or deny the genuineness of the ballots in dispute.    The fact that a ballot is returned, and is not destroyed by burning, corroborates the theory of a dispute as to its validity.    If one is returned, there is no provision of the statute denying the resort to parol evidence that it is not genuine, but is one which has been substituted for that which was really in dispute.    These considerations lead to the conclusion that the Legislature did not intend that the requirement that the poll clerk should record on the tally sheet a memorandum of the disputed ballots should be mandatory.    The conclusion reached by this court in *Parvin* v. *Wimberg*, 130 Ind. 561 (15 L. R. A. 775), a case involving provisions of this present election law, was that, "If a statute simply provide that certain things shall be done within a particular time or in a particular manner, and does not

declare that their performance shall be essential to the validity of an election, they will be regarded as mandatory if they affect the merits of the election, and as directory if they do not affect its merits."

While the provision in question was designed to be followed by poll clerks, it was not, in our opinion, intended that a failure to do so should deny inquiry into the validity of ballots returned by the inspector, though it should involve the responsibility of the officer who neglects his sworn duty. We conclude, therefore, that, *prima facie*, the ballot was admissible in evidence, and its genuineness was open to inquiry upon parol evidence.

Appellee's learned counsel have made the question that the evidence is not in the record, because the longhand manuscript of the stenographic report of the evidence contains the original ballots and not transcriptions thereof. This question has been decided against the contention of counsel, in the case of *Indiana, etc., R. W. Co.* v. *Quick*, 109 Ind. 295, where it was said : "The longhand report of the evidence before us is not, and does not purport to be, a transcript of the evidence introduced at the trial. It is, under section 4010, R. S. 1881, an original manuscript or document incorporated in the bill of exceptions. It follows that original papers read in evidence, and accompanying and properly identified by such longhand report, may be treated in this court as embraced within, and constituting a part of it. The exhibits in question are, consequently, before us as a part of the evidence," etc.

It may be further suggested that in the present case the original ballots were, by order of the lower court, duly entered of record, made a part of the record, and were embodied in the longhand manuscript of the evidence.

For the error suggested, the judgment of the circuit

court is reversed, with instruction to grant the appellant's motion for a new trial.

Filed October 29, 1895.

NOTE.—The authorities upon the effect of marks or devises to distinguish ballots are found in a note to *Rutledge* v. *Crawford* (Cal.), 13 L. R. A. 761, and in the later cases of *Tebbe* v. *Smith* (Cal.), 29 L. R. A. 673, and *Dennis* v. *Caughlin* (Nev.), 29 L. R. A, 731, and cases referred to in foot note thereto.