Lewis v. State, ex rel.—184 Ind. 99.

LEWIS v. STATE OF INDIANA, EX REL. MARLEY.

[No. 22,792. Filed October 5, 1915. Rehearing denied December 15, 1915.]

1. ELECTIONS.—*Ballots.*—*Manner of Marking.*—The manner of marking a ticket as provided by the election law is mandatory, but the marking of a ballot with the character provided by the law otherwise than in accordance with the strict letter of the statute is to be regarded as a distinguishing mark so as to invalidate the ballot only when the position of the mark makes doubtful the intention of the voter. p. 105.

2. ELECTIONS.—*Ballots.*—*Marks.*—*Validity.*—Under the rule announced in *Borders* v. *Williams* (1900), 155 Ind. 36, in construing the act of 1897, §§3, 7, on the subject of marking ballots (Acts 1897 p. 49, §§6927, 6934 Burns 1914), ballots clearly showing the intention to vote for relator, though irregularly marked or not marked at all in the spaces provided for the indication of the voter's choice as to other candidates, or also marked in spaces opposite to which the name of no candidate was set forth, should have been counted for relator, and ballots of a similar character, but clearly indicating the intention to vote for defendant should have been counted for the latter, but ballots containing unauthorized marks in the circle enclosing the party emblem, as well as ballots on which the mark was made entirely outside the square in front of defendant's name, and ballots containing no marks at all, should not have been counted for either party. p. 105.

From Martin Circuit Court; *James W. Ogdon,* Judge.

Action in *quo warranto* by the State of Indiana, on the relation of John A. Marley, against Arthur Lewis. From a judgment for relator, the defendant appeals. *Reversed.*

*Brooks & Brooks, H. Q. Houghton* and *Wade & Padgett,* for appellant.

*Gardiner, Tharp & Gardiner, Fabius Gwin* and *Frank E. Gilkison,* for appellee.

ERWIN, J.—This was an action in *quo warranto,* brought by appellee, relator, against appellant to contest the title to the office of trustee of Mitchelltree Township, in Martin County. The complaint

is in one paragraph. To this complaint appellant filed an answer in two paragraphs, the first being a general denial; the second setting up facts by which he claims title to the office. Trial was had by the court which, upon timely request, made special findings of facts and stated conclusions of law thereon. The assignment of errors is predicated on conclusions Nos. 2, 4 and 7. Conclusion No. 2 states that ballots Nos. 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44 and 45 are each invalid and illegal ballots and ought not to be counted for trustee. Conclusion No. 4 is "that ballot No. 7 is a valid and legal ballot and ought to be counted for trustee"; and conclusion No. 7 is "that the law is with the relator John A. Marley and there ought to be a finding for him on the issues joined on the complaint and answers". No motion for a new trial was filed and the findings of facts are conceded to be correct.

It is found by the court that at the November, 1914, election the parties hereto were opposing candidates for the office, the relator upon the Progressive ticket and appellant upon the Republican ticket; that one Hall was a candidate on the Democratic ticket, who was found to have received 49 votes, and hence is not contesting. In finding No. 6 it is found that relator had 110 votes and appellant 113 votes uncontested by the parties and agreed upon by the parties, and which were not offered in evidence, leaving forty-nine ballots contested. The findings as to these ballots are as follows: "7. The court finds that ballots No. 1, No. 4 and No. 5 were marked with an X in the square in front of the name of relator for trustee, and had an X in the square in front of the name Albert Porter, member of advisory board on the Demoractic ticket, and in the square in front of the name

of Ira L. Fields, member of advisory board on the Progressive ticket, but no mark in front of the name of any other candidate for advisory board, and no other objectionable marks. Ballot No. 2 is exactly like No. 1, except that the cross is in the square in front of the name Lewis Wilking for member of advisory board on Democratic ticket and an X in the square in front of the name of Lloyd Henson, member of advisory board on Progressive ticket and no other objectionable marks. Ballot No. 3 was marked as No. 2. Ballot No. 6 was marked by an X in the square in front of the name of relator for trustee and also in the square in front of the name of Clide Sanders, candidate for road supervisor of district No. 2 on Progressive ticket, was marked thus: $\boxed{/\!\!\backslash}$ the two lines not touching at any point, and in the square in front of the words under the Progressive ticket 'For Road Supervisor, Dist. No. 4', but where there was no name, there was one mark as it went downward varied toward the left, thus: $\boxed{/}$, which mark was very dim and extended for a short distance in said square, and made an 'X' in all the other squares opposite the candidates on Progressive ticket except William Crane, and no other objectionable mark. Ballot No. 7 had no mark, except in the circle containing the emblem of the Progressive party, a mark resembling the figure '4,' thus: $4\!\!\!/$, the two perpendicular lines being at top one-eighth of an inch apart and at the bottom one-eighth of an inch apart, * * * and no other objectionable mark. Ballots Nos. 8, 17, 12, 16, 9 and 11 contained the 'X' in front of the name of relator for trustee and an 'X' in the square in front of the words 'For Justice of the Peace,' 'For Constable,' 'For Constable' under the Democratic ticket, but where there were no names of candidates, and no other objectionable mark. Ballot No. 10 contained

an 'X' in the square in front of relator's name and contained an 'X' in the square in front of the words in the Progressive ticket 'For Road Supervisor, Dist. No. 4', but where there was no name of any candidate and no other objectionable mark. Ballot No. 13 contained an 'X' in the square in front of relator's name and also an 'X' in front of the second set of words 'For Constable' where there was no name of any candidate under the Democratic ticket and no other objectionable mark. Ballots Nos. 14 and 15 were marked by an 'X' in the square in front of relator's name for trustee and also an 'X' in the square in front of the words in the Progressive ticket 'For Road Supervisor, Dist. No. 4', but where there was no name of any candidate, and no other objectionable marks."

"8. The court finds that ballot No. 46 was marked by a cross X in front of and entirely outside of the square in front of defendant's name for trustee under the Republican ticket. Ballots Nos. 32, 30 and 37 were marked by a cross X in the square in front of the name of defendant for trustee, and also a cross X in the square in front of sets of words under the Republican ticket 'For Justice of the Peace', 'For Constable', 'For Constable' where there were no names of candidates, and no other objectionable marks. Ballots Nos. 31, 33, 40 and 41 and 45 contained a cross X in the square in front of defendant's name for trustee and also a cross X in the square in front of the words in the Democratic ticket 'For Justice of the Peace' where there were no names of candidates under the Democratic ticket, and no other objectionable marks. Ballots Nos. 34, 35, 36, 38, 39, 42, 43 and 44 contained a cross X in the square in front of the name of defendant for trustee, and also a cross X in the three squares in front of the words 'For Justice of the Peace', 'For

Constable', 'For Constable' where there were no names of candidates on the Democratic ticket, and no other objectionable marks."

"9. Ballots Nos. 28, 26, 25 and 27 contained a cross X in the square in front of the name of defendant for trustee, and also a cross in several squares in front of other candidates for other offices, but one line of the cross extended near the bottom over the outside of the square thus: ⊠, and no other objectionable marks. Ballot No. 29 contained a cross X in the square in front of defendant's name for trustee and also in the squares in front of the name of John Cox for Road Supervisor, Dist. No. 2, and Clide Sanders for Road Supervisor, Dist. No. 2, under the Democratic and Progressive tickets, and no other objectionable marks. Ballot No. 24 contained a cross X in the square in front of defendant for trustee and a cross in the square in front of 'For Road Supervisor, Dist. No. 1, Perry Cundiff' in which one of the lines of the cross extended below the square for three-fourths of an inch then turned up lightly for one quarter inch, thus: ⊠, and no other objectionable marks."

"10. Ballot No. 21 contained a cross X in the square in front of the name of relator for Trustee; and also in the square in front of the names of two other candidates for the office of Road Supervisor, Dist. No. 3, on Democratic ticket and Republican ticket, and no other objectionable marks. Ballot No. 19 contained a cross in the square in front of the name of relator for Trustee, one line of which extended from without, over and outside of the square, and in one square in front of the name of William Crane for Road Supervisor, Dist. No. 1, were blue markings which had been caused by folding of ticket, and no other objectionable marks. Ballot No. 20 has an X in the square in front of the

name of relator for Trustee, and has an X between the squares on Republican ticket made for second and third members of advisory 'board where there was no name of any candidate, and which X did not touch any square, but which was made by folding of ballot, and very dim, and no other objectionable marks. Ballot No. 18 contained a cross X in the square in front of relator's name for Trustee; and also a cross X in the square in front of the name of Ermal Porter and John W. Sheetz, candidates, respectively, under the Democratic and Progressive tickets for Road Supervisor, Dist. No. 3, and no other objectionable marks."

"11. Ballot No. 22 contained two crosses $\frac{X}{X}$ in the circle above the Progressive ticket, one above the other, and no other mark. Ballot No. 23 contained an X within the square in front of the name of Marion Hall for Trustee. Ballots Nos. 47 and 49 were not marked in any circle or any square for trustee. Ballot No. 48 was marked with an X outside of any square or circle and between the words 'Democratic ticket' and 'For Trustee.' "

"12. That of the ballots Nos. 1, 2, 3, 4, 5, 7, 18, 19, 20, 21, 24, 25, 26, 27, 28 and 29, the relator received 10 votes and defendant received 6 votes."

The questions presented by this appeal are: (a) Should a ballot marked regularly otherwise but marked with a cross in the square preceding the title of an office, where there is no name of a candidate for such office, be counted, or shall such marking be held to be a distinguishing mark? (b) Is a mark in the circle in the form of a figure four (4) a compliance with the statute, or is it a distinguishing mark? (c) Is a marking in the squares preceding the name of a candidate, but which mark is something other than a cross (X) a distinguishing mark? (d) Does the marking of the names of two

candidates for the same office where there is only one to be elected constitute a distinguishing mark so as to invalidate the whole ticket?

The manner of marking the ticket has been held by this court to be mandatory and not directory (*Parvin* v. *Wimberg* [1892], 130 Ind. 561, 30 N. E. 790, 30 Am. St. 254, 15 L. R. A. 775); and we adhere to the rule. In the case of *Sego* v. *Stoddard* (1894), 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468, this court, by McCabe, J., held a ticket stamped on the square to the left of the place of a certain office in a square to which there is no candidate's name printed on the ticket, that office being left blank, is a violation of §45 Acts 1891 p. 129, §6241 Burns 1894, declaring the ticket void, as being a distinguishing mark.

Since the opinion of *Sego* v. *Stoddard*, *supra*, the legislature has spoken on the subject of marking ballots. Acts 1897 p. 49, §6927 Burns 1914. Section 3 of the act (§6927 Burns 1914, *supra*) provides that if the voter desires to vote for all the candidates of one party, he shall make a cross in the large circle containing the party emblem, and if he marks within the large circle he shall not mark elsewhere on the ballot unless there be no candidate for some office in the list printed under such party device, in which case he may indicate his choice by marking in the square to the left of the name of any candidate for such office on other lists; and if the elector desires to vote a mixed ticket he shall omit the mark from the circle inclosing the party device, and indicate his choice of candidates by making a cross in the square immediately preceding their names and a mark upon the ballot in violation of these provisions shall be treated as a distinguishing mark. Section 7 of the same act (§6934 Burns 1914) provides, among

other things: "And any ballot, or part of a ballot, from which it is impossible to determine the elector's choice of candidates, shall not be counted as to the candidate or candidates, affected thereby."

In construing these provisions this court in *Borders* v. *Williams* (1900), 155 Ind. 36, 42, 43, 57 N. E. 527, said: "These provisions of the statute must be construed together in determining when the character provided by law shall be regarded such a distinguishing mark as to invalidate the ballot. It is clear from the law itself that the legislature intended it should be so regarded only when its position upon the ballot makes doubtful the intention of the voter, or casts suspicion upon the integrity of the vote. The law provides that a mark in the circle inclosing the party emblem shall indicate the voter's intention to vote a straight ticket, and a mark in the squares below the emblem shall indicate his intention to vote a mixed ticket. So, if a mark appears in the large circle with the party emblem, indicating a straight vote, and also marks appear upon the small squares below, indicating a mixed ticket, the two positions being inconsistent, the judges of election will be unable to determine whether a straight or mixed ticket was intended by the voter, and the whole ballot must therefore be rejected for uncertainty. Likewise, when a cross or other mark is found anywhere upon the ballot, without the circle and squares, its position will indicate no lawful purpose whatever, and discredit the entire ballot, and in such cases the cross must be regarded as a distinguishing mark in the sense that it invalidates the ballot. It is purity of election and a free and honest expression of the voter's will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appearance of the ballot is

such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained. *Bechtel* v. *Alvin* [1893], 134 Ind. 193, 200 [33 N. E. 967]; *Zeis* v. *Passwater* [1895], 142 Ind. 375 [41 N. E. 796]. It should be borne in mind, in passing upon the validity of a ballot, when the questionable mark is the prescribed cross, and the same touches or is within a circle or square, that many voters are unskilled in the use of the pencil, that some degree of nervousness frequently attends the preparation of the ballot, that the light in the booth is often poor, the vision of many impaired, and that in passing from one list of candidates to another in an imperfect light or vision it reasonably may, and doubtless does sometimes, happen that the voter by honest mistake places his mark upon a line or square different from the one intended; and when this is shown by the general appearance of the ballot, and the ballot is properly executed in all other respects, it should be counted for all the other candidates not affected by the mistake. This is the evident meaning of the statute last above quoted. We are supported in this view from another consideration. After the passage of the election law of 1897, *supra*, the two great political parties, through their respective state central committees, by mutual agreement, each selected a committee of three lawyers, eminent for their legal learning, to construe several provisions of the law. These committees met in joint session, and, having concurred in an opinion upon the correct construction to be given to each of the several sections of the law submitted to them reported the opinion to their several parties' state central committees, which was by each central committee and by the state board of election commissioners approved, and accepted as the correct ex-

position of the law. This report was published by authority of the state board of election commissioners as the law governing elections, and distributed throughout the State for the guidance of voters and election officers in holding the election of 1898; and in construing §7 of the act of 1897 with respect to the marking of ballots said joint committee employ the language following: 'In case there are two or more persons to be elected to the same office, as in the case of senators and representatives in the legislature, judges of the superior court, justices of the peace, etc., if the name of one or more, but less than all, of such persons for a particular office are marked on one or more of the tickets the ballot must be counted for the persons whose names are so marked; but if, in such case the names of more persons than are to be elected to the particular office are marked on any ballot, such ballot can not be counted for any person for that office, for the reason that it can not be determined which of the right number to be elected were intended to be voted for, but the ballot is valid and must be counted for the candidates for other offices as to whom it is properly marked.' Election Laws and Instructions to Voters, 1898, p. 5. 'If any ballot be found mutilated, defaced or marked so that it can be identified, it must not be counted; but the board should not adhere to such a severe construction of the law as will deprive innocent or honest voters of their rights. In determining the intention of the voter a careful but common sense discretion should be exercised.' *Supra*, p. 14. In considering a similar report made upon the election law of 1889, this court said in *Parvin* v. *Wimberg* [1892], 130 Ind. 561, 565 [30 N. E. 790, 30 Am. St. 254], 15 L. R. A. 775; 'It is fair to presume that the electors and election

officers throughout the State accepted this as the true construction of the statute under consideration, and, thereupon, in conducting the ensuing election, acted upon it. This construction having been accepted and acted upon by the officers whose duty it was to administer the law, the courts should not now ignore it unless it is palpably wrong.' See authorities there cited. And adopting as our own the further language of the court in that case: 'The construction placed upon the statute by the committee to whom it was referred is not palpably wrong, but, on the contrary, we think, the conclusion it reached is the correct one.' "

In this case the ballots were printed in regular form, but on the Democratic ticket under the title of "For Justice of the Peace" and the two titles of "For Constable", the name of no candidate appears. The same is true under the title of "For Member of Advisory Board", no names of candidates were printed. The same condition exists on the Progressive ticket as to the title "For Road Supervisor, Dist. No. 4." 1 Adhering to the rules as announced in the cases herein cited we are of the opinion that ballots Nos. 1, 2, 3, 4, 5, 6, 8, 10, 12, 16 and 17 as described in findings Nos. 7, 18, 20 as shown by finding No. 10 clearly indicate the intention of the voters to cast their ballots for the appellee; that ballots Nos. 22, 46, 47 and 49 were invalid and should not have been counted at all; that No. 23 was properly counted for Hall, the Democratic candidate; that ballots Nos. 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44 and 45 indicate the intention of the voters to cast their ballots for appellant; that ballot No. 7 containing the figure 4 within the circle is a distinguishing mark, and should not be counted for either party. Adding the 20 contested ballots voted for appellee to the 110

conceded votes makes his total vote 130, and adding the 22 found voted for appellant to the 113 conceded votes makes his total vote 135, which gives appellant a plurality of five.

Judgment reversed with instructions to the court to restate its conclusions of law in conformity with this opinion.

NOTE.—Reported in 109 N. E. 777. As to marking ballots at elections, see 49 Am. St. 240. As to distinguishing marks on official ballots, see 13 L. R. A. 761; 47 L. R. A. 820. As to the validity of a ballot with respect to the place of mark for candidate, see 20 Ann. Cas. 672. See, also, under (1) 15 Cyc 356, 359; (2) 15 Cyc 358, 359.