## SPAULDING v. ROMACK.

### [No. 22,793.    Filed June 21, 1916.]

1. ELECTIONS.—*Ballots.*—*Manner of Marking.*—*Distinguishing Marks.*—While the provision of the statute (§6934 Burns 1914, as amended Acts 1909 p. 162), declaring that any distinguishing mark appearing on a ballot shall render it void, is mandatory, yet the courts will not adopt a strict and technical view in determining what constitutes a distinguishing mark, and the intention of the voter will be given effect if it is apparent that he has made an honest effort to, and does substantially, comply with the law in the preparation of his ballot.    p. 111.

2. ELECTIONS.—*Ballots.*—*Manner of Marking.*—*Distinguishing Marks.*—*Validity.*—On the authority of the rule announced in *Borders* v. *Williams*, 155 Ind. 36, and followed in *Lewis* v. *State, ex rel.*, 184 Ind. 99, construing §§3 and 7 of the Act of 1897 (§§6927, 6934 Burns 1914, Acts 1897 p. 49), on the subject of marking ballots, ballots marked in a square at the left of a space where no candidate's name appears are not invalid as bearing a distinguishing mark within the terms of the statute, and should be counted as legal ballots.    p. 111.

3. ELECTIONS.—*Ballots.*—*Distinguishing Marks.*—*Form of Marks.*—Under §§6927, 6934 Burns 1914, Acts 1897 p. 49, providing the manner of marking ballots and declaring what shall be deemed distinguishing marks, a voter marking his ballot in the proper space by an imperfectly formed cross will not be deprived of his vote by reason thereof although such manner of marking does not strictly comply with the law, since a substantial compliance with the statute is all that is required.    p. 112.

4. ELECTIONS.—*Ballots.*—*Distinguishing Marks.*—Slight pencil lines or dots appearing on the face of a ballot are not distinguishing marks such as will render a ballot void under §6934 Burns 1914, Acts 1897 p. 49, where such marks are of a character that it is apparent that they were made by accident.    p. 113.

From Tipton Circuit Court; *James M. Purvis*, Judge.

Action by Frank Bedford Spaulding against James L. Romack. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Addison C. Harris, J. R. Coleman* and *Edward Daniels*, for appellant.

*Kemp & Kemp, Clinton T. Brown* and *Gifford & Gifford*, for appellee.

LAIRY, J.—This is an appeal from a judgment of the trial court in an action to contest an election. Appellant and appellee were opposing candidates for the office of trustee of Liberty township, Tipton county, Indiana, at the election held November 3, 1914. The only error assigned is based on an action of the trial court in overruling appellant's motion for a new trial. The causes assigned for a, new trial question certain rulings of the court in admitting in evidence certain ballots purporting to express votes for appellee. On the trial it was admitted that 194 votes were cast and properly counted for appellee, and that 224 votes were cast and properly counted for appellant. The vote of each candidate as thus admitted was increased seven votes by ballots admitted in evidence without objection.

Over appellant's objection the court admitted forty-six ballots, each purporting to express a vote for appellee; and over appellee's objection fifteen ballots were admitted, each purporting to express a vote for appellant. The court thus found the total vote cast for appellant to be 246, and the total vote cast for appellee to be 247. The objection urged by appellant against the forty-six ballots admitted and counted in favor of appellee is that each of such ballots bears some distinguishing mark which renders it invalid.

The original Australian ballot law was passed in this State on March 6, 1889, Acts 1889 p. 157, 178. Under the provisions of §45 of this act, the voter was required to use a stamp furnished for that purpose in marking his ballot. In indicating his choice of candidates the elector could vote a "straight ticket" by placing the stamp on the square to the left of the name of the political party whose candidates he desired to support.

In the case the elector desired to vote a "split" or "mixed" ticket he was permitted to stamp a square at the left of the name of one of the political parties, and then to indicate his vote for candidates of other political parties by stamping the square to the left of such candidates as he desired to support. Section 52 of the act (Acts 1889 p. 178) provided that any ballot which should bear a distinguishing mark or mutilation should be void, and should not be counted; but the act nowhere designates or specifies what shall be considered or treated as a distinguishing mark.

Several sections of the original act were amended in 1891. Acts 1891 pp. 124-135, §6199 *et seq*. Burns 1894. Section 26, *supra*, was so amended as to provide for a party emblem in a square at the head of the list of candidates of each political party filing nominations. Section 45, *supra*, was amended so as to change the manner of stamping ballots to indicate the choice of candidates. An elector desiring to vote for all of the candidates under a party emblem might do so by placing a stamp mark inside of the square containing the emblem. If the voter placed a stamp mark in a square enclosing the party device, he was not permitted to place any other stamp on the ballot, unless there was no candidate in the list under such device for one or more of the offices to be filled, in which event he might indicate his choice for such office by stamping the square to the left of any candidate for such office appearing on any other list. The elector was also permitted to indicate his choice of candidates by stamping the square at the left of the name of each candidate so selected. All of the candidates to be voted for in this manner might be selected from one list, or from any or all of the lists of candidates printed

on the ballot; but, in case the voter adopted this means of indicating his choice of candidates, he was not permitted to place a stamp on the square enclosing any party emblem, or elsewhere on the ballot. This section also provided that a *stamp mark on a ballot in violation of this provision should be treated as a distinguishing mark.*

At the session of 1897 the legislature passed an act slightly modifying the statute of 1891, as to the printing of ballots and the mode of indicating a choice of candidates by the voter. Acts 1897 p.49, §6908 Burns 1914. Section 1, *supra,* of this act provides that the party emblem should be enclosed in a circle instead of a square, and by §3, *supra,* §6927 Burns 1914, the voter was required to indicate his choice of candidates by the use of a blue pencil furnished for that purpose instead of using the stamp as provided by previous laws on the subject. To indicate his choice he was required to make a cross, thus, ×, with the blue pencil, but no change was made in the act of 1891 as to the placing of the marks to indicate a choice of candidates. The mark by the blue pencil was substituted for the mark to be made by the stamp and no other substantial change was made in regard to marking ballots. This section provides that a *mark* on the ballot in violation of this provision shall be treated as a distinguishing mark.

Thirty-seven of the ballots counted for appellee were marked with a cross on a square at the left of a space where there was no candidate's name. Appellant relying upon the case of *Sego* v. *Stoddard* (1894), 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468, contends that these ballots so marked bore distinguishing marks under the express terms of the statute. It was held in the case relied on that, where no name of a candidate appears under the

title of an office in a certain list of candidates, a stamp mark in the square at the left of such blank space is a distinguishing mark. As such a mark is not on or touching any circle enclosing an emblem and is not on or touching any square at the left of the name of any candidate as provided by the statute, it was thus held to be a mark in violation of the act, and hence a distinguishing mark under its terms. The rule declared by this decision would tend to work a great hardship to many innocent voters who attempt to vote a mixed ticket. There can be no doubt that most of such voters are adherents of some one of the political parties and desire to vote for most of the candidates of that party. In an attempt to vote a mixed ticket, such a voter would probably use care to mark the squares at the left of the names of such candidates of other parties as he desired to support, and would carefully refrain from marking the squares at the left of the names of candidates of his own party for those offices. Having accomplished this, he desires to vote for all of the other candidates on his party ticket, and to do so he must mark the square at the left of the name of every other candidate. In his haste to complete the marking of his ballot he may make a cross in each of the remaining squares in the list under the emblem of his party, without looking closely to see that a candidate's name appears at the right of each of them. In so doing he may mark squares which are not at the left of the name of any candidate and thus would invalidate his ticket by a distinguishing mark within the rule declared by the decision referred to.

In the later case of *Lewis* v. *State, ex rel.* (1915), 184 Ind. 99, 109 N. E. 777, this court did not follow the rule announced in *Sego* v. *Stoddard, supra,*

but adopted the principles announced in the case of *Borders* v. *Williams* (1900), 155 Ind. 36, 57 N. E. 527. In that case, it was held that a cross placed in the squares at the left of the names of two candidates for the same office does not invalidate a ballot within the meaning of the statute, for the reason that it merely renders it impossible for the canvassers to determine from such ballot the voter's choice as to these two candidates, and discloses no unlawful intent on the part of the voter. Although the effect of a certain provision of §13 of the act of 1891 (Acts 1891 p. 133, §6934 Burns 1914), is not discussed in the opinion in the case of *Sego* v. *Stoddard, supra,* this provision of the law which still remains is set out and construed in *Borders* v. *Williams* and *Lewis* v. *State, ex rel., supra.* The provision referred to is as follows: "And any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates shall not be counted as to such candidate or candidates affected thereby." (Acts 1897 p. 54, *supra.*) The court in the case of *Borders* v. *Williams* was of the opinion that, construing the section of the statute last quoted together with the other sections of the act, it was the intention of the legislature, when a ballot was found to have been marked in a manner manifesting no ulterior purpose, but failing merely to express a choice in certain particulars, such ballot should not be thereby invalidated as a whole, but should not be counted only as to the candidates affected. The ballots now under consideration in the case at bar and those in the case of *Lewis* v. *State, ex rel., supra,* are similar to those held valid in the case of *Borders* v. *Williams, supra.* The marks complained of are crosses appearing in squares as provided by the act; and, while they

fail to express a choice of candidates for a particular office, they do not appear to have been made with any unlawful design. Were this a case of first impression, it is possible that the court would feel inclined to adopt a more strict construction of the statute as was done in the case of *Sego* v. *Stoddard*, *supra*. Courts generally, however, have not given so strict a construction to statutes of this kind. With a view to giving effect to the intention of the voter, a substantial compliance with the law in the preparation of the ballot has been held to suffice, if the general appearance of the ballot is such as to clearly indicate an honest effort of the voter to comply with the law. The law declares that all distinguishing marks appearing upon the ballot shall render it void; and this provision is mandatory. To adopt at this time, however, a strict and technical view in the consideration of what are distinguishing marks, within the meaning of the statute, would tend to work great injustice and hardship, as it would completely revolutionize a method of voting and canvassing votes employed and observed for years. Such hardship would be out of all proportion to the good to be accomplished. Under the authority of *Borders* v. *Williams* and *Lewis* v. *State, ex rel.*, *supra*, the trial court did not err in admitting these thirty-seven ballots in evidence and in counting them for appellee.

1.

2.

The remaining nine ballots bore marks dissimilar in character. Exhibits 17, 31, 48, 49 and 54 are ballots which contain in squares or circles a more or less imperfect cross, which purport to have been used by the voter in the expression of his choice but which do not conform strictly to the cross which the statute provides shall be made by the voter for that purpose. These ballots are objected to upon the

ground that, inasmuch as the designs used by the voters in the expression of their choice do not conform to that designated by the statute, they are marks in violation of the statute, and hence distinguishing marks under the express provisions of the law. There can be no doubt that the legislature, in providing that the voter should indicate his choice of candidates by a cross, thus, $\times$, intended that the mark should be made with the blue pencil, and that it should be in the form of a cross. Adopting a strict construction of the illustration given as to the form of the cross, however, would be unduly technical and would tend to defeat the purpose of the act, which was not alone to secure the purity of elections, but was also to provide for the safe, efficient and practical system of ascertaining the will of the people. A strict and literal construction of this section of the act would necessarily result in the nullification of practically all of the votes cast, for the reason that it would be almost impossible for a voter to make lines absolutely straight, make them of exactly the same length and make them cross at angles precisely measuring to those formed by the cross which is set out in the statute. Under a more liberal doctrine, courts have been inclined to treat the illustration as used in the section as being merely directory. Accordingly a substantial compliance with the design provided by the statute is

3. all that has been required. A voter will not be deprived of his vote by mere inadvertance, mistake, or ignorance on his part if an honest intention is ascertainable from the ballot; and the intention of the voter will be given effect, although the marking of the voter does not conform strictly to the provisions of the statute on that subject. *Lewis* v. *State, ex rel., supra; State, ex rel.* v. *Thorn-*

*burg* (1911), 177 Ind. 178, 97 N. E. 534; *Bechtel* v. *Albin* (1893), 134 Ind. 193, 33 N. E. 967.

Exhibits Nos. 4, 37, 47, 56 and also exhibit No. 48 were objected to upon the ground that such ballots bore upon the face thereof distinguishing marks by which the ballots and the voters who prepared them could be identified and that such ballots were therefore void. On each of the ballots there appears a slight pencil line or dot at some place on the face of the ticket. These lines or dots, however, are of such a character as to forbid the belief that they were made with design; on the contrary, they appear to have occurred by accident. While technically they are marks other than crosses within circles or squares as designated by the statute, under the view taken by our courts they are not distinguishing marks such as the act contemplates shall render the ballot void. It has been held that a distinguishing mark that will invalidate a ballot is such a mark as fairly imputes upon its face design and dishonest purpose, and that the slight soiling of a ballot which reasonably appears to have been the result of accident or want of due care by the voter in that regard is not sufficient to condemn it, if otherwise fair. *Tombaugh* v. *Grogg* (1900), 156 Ind. 355, 59 N. E. 1060.

Great variations and conflicts in the decisions have arisen in the application to specific cases of election laws on the subject of marking ballots. While the conflict existing among the opinions can be partly accounted for by the different statutory provisions which exist in different states, they can not be all so explained. The subject under consideration is discussed and the conflict among the decisions shown in a recent work with citation

to numerous authorities. 9 R. C. L. §§130-136. A general tendency, however, is manifested toward the adoption of the liberal doctrine followed in this opinion.

The trial court was evidently of the opinion that these nine ballots in question bore no marks upon their faces of such a character as to be in violation of the law, and that they were marked by the voters who prepared them in substantial compliance with the provisions of the statute on that subject. Under this view these exhibits were correctly admitted in evidence, and this court is of the opinion that the trial court did not err in the view so taken.

There was no error in overruling appellant's motion for a new trial. Judgment affirmed.

Note.—Reported in 113 N. E. 229. Construction of laws relative to the marking of official ballots, note 47 L. R. A. 806. . Distinguishing marks that invalidate ballots, 47 L. R. A. 812, 20 Ann. Cas. 672. Irregularities in marking ballots, 15 Cyc 357.