## WRIGHT *v.* WALKER.

[No. 24,997.    Filed April 22, 1926.]

1. ELECTIONS.—*Special findings in election contest that certain ballots were legal and others were illegal were not findings of facts but mere conclusions, which must be disregarded on appeal.*—In an election contest, special findings that certain ballots were legal and others illegal were not findings of facts but were conclusions of law, and will necessarily be disregarded on appeal.    p. 565.

2. ELECTIONS.—*In absence of sworn denial of contestor's qualifications as a voter, special finding of facts showing that he was entitled to vote at the election was not necessary in election contest.*—In the trial of an election contest in the circuit court, under the provisions of §389 Burns 1926, where no sworn denial of contestor's capacity as a qualified voter was filed, it was not necessary for a special finding to recite facts showing that he was entitled to vote at the election.    p. 566.

3. ELECTIONS.—*Absent voters' ballots should not be rejected merely because poll clerks' initials were not indorsed thereon.* —In the trial of an election contest, it was error to reject absent voters' ballots merely because the initials of the poll clerks had not been indorsed thereon before the ballots were put in the ballot box.   p. 566.

4. ELECTIONS.—*Filing an answer in election contest alleging, that absent voters' ballots that were illegal because election clerks' initials were not indorsed thereon were counted for contestor held not invitation to commit error by refusing to count them so as to bar reversal for such error.*—In an election contest, the filing by the contestee of a paragraph of answer alleging that "illegal absent voters' ballots were cast and counted for contestor without being signed by initials of the polling clerks" was not alone a procurement of the trial court to commit the error of excluding such ballots where the contestee obtained no ruling refusing to count them but insisted that they should be counted, and hence did not preclude the reversal of the judgment for the error so committed.   p. 566.

5. ELECTIONS.—*Ballots showing traces of erased marks, ballots on which one line of a cross was not long, enough and indicated that it had been made with a broken lead so split that outer sides of line were much heavier than center, and ballot with very minute crosses, lines of which did not completely cross, held valid.*—Ballots showing traces of erased marks, ballot on which one line of a cross was not long enough and indicated that it had been made with a broken lead so split that outer sides of line were much heavier than center, and ballot with very minute crosses, lines of which did not completely cross, *held* valid.   p. 566.

6. ELECTIONS.—*Distinguishing, mark that will invalidate a ballot must clearly indicate design and dishonest purpose, not mere irregularity arising, from inadvertence or lack of skill in marking ballot.*—To invalidate a ballot, a distinguishing mark must clearly indicate design and dishonest purpose, and not merely such irregularity in marking the ballot as would arise from inadvertence or lack of skill.   p. 566.

7. ELECTIONS.—*Trial court's decision that small cross marks at end of the lines of cross in circle at top of ticket were not distinguishing, marks will not be disturbed on appeal in absence of specific indication that they were made for improper purpose.*—The trial court's decision that small cross marks at the end of the lines of the cross in the circle at the top of the ticket were not distinguishing marks will not be disturbed on appeal in the absence of any specific indication that they were made for an improper purpose.   p. 569.

8. ELECTIONS.—*Under §7497 Burns 1926, ballots with crosses outside the square or circle, but extending to and touching the line thereof, were legal ballots.*—Under the provisions of §7497 Burns 1926, §6927 Burns 1914, ballots with crosses outside the square or circle, but extending to and touching the line thereof, were legal ballots and were properly counted.  p. 569.

9. ELECTIONS.—*Ballots marked by crosses resembling letters "T" and "V" more than "X," ballot on which line of cross appeared double, and ballots on which one line of each cross was crooked and much longer than other, were properly counted.*—Ballots marked with crosses resembling letters "T" and "V" more than letter "X," ballot on which one line of cross appeared double, and ballots on which one line of each of the crosses was crooked and much longer than the other were properly counted, as such imperfections may have been caused by dim light, defective sight, or lack of skill in handling a pencil, rather than dishonest intention.  p. 570.

10. ELECTIONS.—*Ballot properly and regularly marked, except that it bore evidence of erasure beneath mark, possibly due to fact that paper was soiled, was properly counted.*—A ballot which was properly and regularly marked, except that it bore some evidence of an erasure beneath the mark, which may have been due to the fact that the paper was soiled, was properly counted.  p. 570.

11. ELECTIONS.—*Ballots apparently marked with imperfectly sharpened pencil, at times recording only impress of pointed stick, and at other times, would make a dim and imperfect line, and others indicating that the point had been broken and would make a double line resembling two marks, were properly counted.*—Ballots marked with an imperfectly sharpened pencil, some of them indicating that, in places, the wood projected beyond the lead, and, in drawing it across the paper, it sometimes would only record the impress of a pointed stick, and at other times, would make a very dim and imperfect blue line, and others indicating that the point had been broken and would make a double line closely resembling two marks, were properly counted.  p. 570.

12. ELECTIONS.—*One line in square or circle, without any attempt to complete the cross, or two parallel lines across a square or circle, held to be distinguishing marks invalidating the ballots.*—Making only one line in a square or circle, without attempting to complete the cross by making the other line, or making two parallel lines across a square or circle, *held* to be distinguishing marks that invalidated the ballots.  p. 571.

13. ELECTIONS.—*Finding that contestor of election received majority of legal votes cast held not sustained by the evidence.—*

Court's finding that the contestor of an election received a majority of the legal votes cast *held* not sustained by the evidence. p. 571.

From Ripley Circuit Court; *Cecil C. Tague,* Special Judge.

Election contest by Ernest L. Walker against James L. Wright. From a judgment for the contestor, the contestee appeals. *Reversed.*

*M. F. Bohland* and *Wycoff & Wycoff,* for appellant.
*Charles S. Royce* and *Tremain & Turner,* for appellee.

EWBANK, C. J.—This was an action by appellee, Walker, to contest the election of appellant, Wright, to the office of recorder of Ripley county. Appellee is hereafter referred to as the contestor and appellant as the contestee. The complaint alleged in general terms that the contestor was a qualified elector of Ripley county, Indiana, entitled to vote at the general election on November 4, 1924; that at said election the contestor and contestee were the only candidates for the office of recorder of said county; that there were received and counted for the contestee for said office 4,706 votes and for the contestor 4,697 votes. And that irregularities of the board of election officers in each precinct in counting votes for the contestee that should have been counted for the contestor, and mistakes and fraud committed in counting the ballots in each of the precincts resulted in the said showing, whereas if the votes had been correctly counted and returned the contestor had received a majority of the legal votes cast. The answer was a general denial, and a second paragraph alleging that in certain precincts illegal absent voters' ballots were cast, voted and counted for the contestor without being signed by initials of the polling clerks of the precinct. The reply was a general denial. Upon proper request the court made a special finding of facts on

which he stated a conclusion of law "that the contestor is the duly and legally elected recorder of Ripley county, Indiana," to which conclusion the contestee excepted. He thereafter filed a motion for a new trial for the alleged reasons that the decision of the court is not sustained by sufficient evidence and is contrary to law, and that each of certain findings specified by numbers is not sustained by sufficient evidence and is contrary to law; also that the court erred in counting for the contestor certain ballots that were admitted and read in evidence, and in refusing to count for the contestee certain other ballots so admitted and read in evidence. This motion was overruled and the contestee excepted. Errors are assigned upon the conclusion of law and. the ruling on the motion for a new trial.

The only facts recited in the special finding are that the contestor received 4,610 and the contestee 4,594 uncontested legal ballots for the office of county recorder of Ripley county at said election, and that there were cast for the contestor 4,629 and for the contestee 4,607 legal votes for said office at that election. The finding of the court also sets out what purport to be fifty other findings, numbered from third to fifty-second, inclusive, of which the following are examples: "3rd. That contestor's exhibit No. 2 was a legal ballot. 4th. That contestor's exhibit No. 3 was an illegal ballot. * * * 52nd. That contestee's exhibits Nos. 45 to 69, inclusive, were illegal ballots." None of these were findings of any facts whatever. Each of the fifty recitals was a conclusion of law based upon facts wholly undisclosed by the special findings. Thus exhibit No. 2 may have been a legal ballot because it was properly marked in the manner required by law, presented by a qualified voter, indorsed with the initials of the poll clerks, and duly placed in the ballot box. And exhibit No. 3 may have been an illegal ballot be-

cause it was insufficient in any of those particulars, or because it bore a distinguishing mark, or for some other reason. And each or any of the twenty-five ballots numbered as exhibits forty-five to sixty-nine may have been illegal because of any one or more of half a dozen reasons. , But the special finding fails to disclose any of the facts from which a conclusion would follow that either of these ballots was legal or that any of them were illegal. These findings of conclusions must be disregarded.

No facts whatever were found as to the contestor being a qualified elector of the county and entitled to vote at the election. But the statute provides

2. that, "the character or capacity in which a party sues  *  *  *  shall require no proof on the trial of the cause unless such character, capacity  *  *  * be denied by a pleading under oath, or by an affidavit filed therewith." §389 Burns 1926, §365 R. S. 1881. No such denial under oath having been filed, and the contestor's right to sue as a qualified elector being admitted on the face of the record, it was not necessary for the special finding to recite facts showing that he was entitled to vote at that election. The trial court did not err in its conclusion of law.

It was stipulated and agreed that 4,610 valid and legal ballots were cast and counted for the contestor, and 4,594 for the contestee. Nineteen ballots,

3-6. the validity of which is disputed by the contestee, after being read in evidence, were counted in favor of the contestor. Thirteen disputed ballots were counted in favor of the contestee, as to which no question is presented by this appeal. And fifty-six disputed ballots, after being admitted and read in evidence, were disregarded by the court and not counted, although they were marked in favor of the contestee. Of the latter, forty-nine ballots were in all respects regular as votes

in favor of the contestee, except that they did not bear
the initials of the poll clerks, and it was shown by
competent evidence, without dispute, that they and three
others of the ballots which the court refused to count
were cast by absent voters.    It was error to reject
the ballots of absent voters where they were in all re-
spects regular and correct except that the initials of
the poll clerks had not been indorsed thereon before
the ballots were put in the box.    *Werber* v. *Hughes*
(1925), 196 Ind. 542, 148 N. E. 149, 153; *McArtor* v.
*State, ex rel.* (1925), 196 Ind. 460, 148 N. E. 477, 479.

But appellee says that the error thus committed was
invited and induced by the contestee, and insist that
the rule which should govern is that a party cannot
procure and induce the trial court to commit an error
and then obtain a reversal because of that error com-
mitted by his procurement.    It does not appear that at
any time while the trial was in progress, the contestee
objected to counting absent voters' ballots on which the
poll clerks had failed to indorse their initials, or that
he said or did anything at any time tending to induce
the court erroneously to refuse to count any such bal-
lots, except only that he had filed a second paragraph
of answer in which he stated that in each of certain
precincts illegal ballots were cast and counted for the
contestor, specifying that a certain number of "illegal
absent voters' ballots were cast and counted for con-
testor without being signed by initials of the polling
clerks of said precinct."    But it appears that, after
filing this paragraph of answer as well as an answer
of general denial, the contestee, not once only, but scores
of times offered in evidence and asked the court to count
as legal a long series of ballots cast by absent voters on
which the poll clerks had failed to indorse their initials
before the ballots were put in the box.    And all there is
to support contestor's claim that the contestee procured

and induced the court to commit an error in this particular is the fact that in stating his objections to counting each of these ballots, the attorney for his antagonist, the contestor, after stating that he objected for the reason that the poll clerks' initials were not on the back of the ballot, added, "and for the further reason that the contestee in his second paragraph of answer alleges that such ballots are illegal." But where the contestee did not obtain a ruling refusing to count ballots of the kind described, but was present in court asking and insisting that these ballots should be counted, and is not shown at any time in the course of the trial to have told the court that the failure of the poll clerks to put their initials on the ballots cast by absent voters made them illegal, we do not think that merely having filed a second paragraph of answer which stated that, "illegal absent voters' ballots were cast, voted and counted for contestor without being signed by initials of the polling clerks of said precinct," can be deemed such an invitation and procurement of the court to commit error by refusing to count legal absent voters' ballots on which the poll clerks had failed to place their initials as will bar the contestee from the benefit of his exceptions on appeal. Of the other ballots marked in favor of the contestee which the trial court refused to count, contestee's exhibits Nos. 10 and 14 were clearly and sufficiently marked with a cross at the proper place, but each of them showed some traces of what may have been marks made with a blue pencil and then erased. Also contestee's exhibit No. 17 is marked by a cross, the only objection to which is that one of the lines was not drawn long enough and was made with the broken end of a pencil so far split that the outer sides of the line are much heavier than the center so as to look somewhat like two parallel lines; and contestee's exhibit No. 9 was marked with very minute crosses, two

of which were so made that the lines did not completely cross each other. We think that in the execution of all these ballots there was such a substantial compliance with the law as indicates an honest effort by the voter to comply with it, and affords the means of clearly ascertaining his choice of candidate, without putting on the ballot any such distinguishing mark as could aid in the violation of the law. To invalidate a ballot, a distinguishing mark must be such as fairly imputes upon its face design and dishonest purpose, and not merely such irregularity in making the cross as would arise from inadvertence and lack of skill. *Tombaugh* v. *Grogg* (1901), 156 Ind. 355; *Glick* v. *Hunter* (1920), 190 Ind. 51, 56, 129 N. E. 232; *Spaulding* v. *Romack* (1916), 185 Ind. 105, 111, 113 N. E. 229. The contestee's exhibits numbered 9, 10, 14 and 17, and his exhibits numbered 21 to 69 inclusive, a total of fifty-three of the rejected ballots, should have been counted as votes in his favor.

Of the disputed ballots counted in favor of the contestor, exhibits Nos. 2 and 11 were each marked by a cross in the circle at the top of the ticket, but 7. at the end of each line there was a little cross mark as if to give a finish to the stroke. In the absence of anything else to indicate that this was made for an improper purpose, we cannot disturb the decision of the trial court that these were not distinguishing marks.

In each of contestor's exhibits numbered 9, 10, 16 and 22, the cross was made outside of the square or circle in which it should have been placed, but extended 8. to and touched the line defining the square or the circle. The statute provides that, "if a pencil mark touches a circle or a square, it shall be counted on such circle or square, but a mark that touches no circle or square shall be treated as a distinguishing

mark." §7497 Burns 1914, §3, ch. 41, Acts 1897 p. 49, 51. These ballots were properly counted for the contestor.

Contestor's exhibits Nos. 21 and 26 were properly marked, except that one of the lines of the cross was not drawn entirely across the other, and the marking bore a greater resemblance to the letter "T" than to the letter "X." On contestor's exhibit No. 18, a cross was so carelessly made that the two lines came together in close resemblance to the letter "V," and another mark was so blurred that one of the lines appeared to be double. Contestor's exhibits Nos. 14 and 24 were regular in form except that in each case one of the lines was much longer than the other and not straight. The imperfections and irregularities in marking these ballots may all have been caused by dim light, defective sight, and lack of skill in the use of a pencil, and not by any dishonest intention, and we do not feel justified in setting aside the ruling of the trial court admitting them in evidence. *Glick* v. *Hunter, supra; Spaulding* v. *Romack, supra.* The contestor's exhibit No. 3 was properly and regularly marked, except that it bore some evidences of an erasure beneath the mark, which might, however, have been merely due to the fact that the ballot was soiled. This ballot was properly counted. *Spaulding* v. *Romack, supra.* Several of the ballots bear internal evidence of having been marked with a pencil that was imperfectly sharpened, so that in places the wood projected beyond the lead, and in drawing it across the paper it sometimes would only record the impress of a pointed stick, at other times would make a very dim and imperfect blue line, and again, when the pencil was freshly sharpened and the point broken, would make a double line closely resembling two marks. In view of this fact we

do not think that the trial court committed an error in counting as legal ballots contestor's exhibits Nos. 12, 19 and 23.

In contestor's exhibit No: 25 two nearly parallel lines varying from one-sixteenth to one-eighth of an inch apart were drawn across the large circle at the top of the ballot, and a single line across the circle was drawn at right angles to them. And in each of contestor's exhibits numbered 7 and 15, after marking with crosses the names of candidates on both tickets, the voter had drawn a single line diagonally through the square at the left of the name of another candidate without finishing the cross which he thus apparently started to make. And on neither of them was there anything to indicate that he drew across the square at right angles with this mark a poorly sharpened pencil which had failed to leave a blue mark only because the wood was not sufficiently cut away. We hold that making one line in a square or a circle without attempting to complete the cross by making the other line or deliberately and intentionally drawing two parallel lines in making the cross is a distinguishing mark. Contestor's exhibits Nos. 7, 15 and 25 should not have been counted.

In other words, the trial court counted for the contestor three ballots which should not have been counted at all, and refused to count in favor of the contestee fifty-three ballots that had been lawfully cast for him. Adding fifty-three to the 4,607 votes which the trial court counted in favor of the contestee would give him 4,660 votes, while subtracting three from the 4,629 votes counted for the contestor would give him only 4,626 votes. In other words, the evidence received and admitted was to the effect that more legal ballots were cast for the contestee than for the contestor, and the finding of the court that the con-

testor received a majority of the votes cast is not sustained by sufficient evidence.

The judgment is reversed, with directions to sustain the motion of the contestee for a new trial.