### ROBERTS *v.* DRAKE.

[No. 26,157.   Filed April 26, 1933.   Rehearing denied September 9, 1933.]

*William Fitzgerald, Dixon & Meloy, Lemen & Cooper* and *Montgomery & Montgomery,* for appellant.

*Wycoff & Wycoff* and *Chester R. Callis,* for appellee.

HUGHES, J.—Appellant, Rolland Roberts, and appellee, Clyde Drake, at the election held November 4, 1930, were opposing candidates for the office of Township Trustee of Craig Township, in Switzerland County, Indiana. A certificate of election was given the appellant by the election commissioners. He qualified and entered upon the duties of his office. The appellee, within the proper time, filed with the auditor of Switzerland county notice that he intended to contest the election. The contest was heard by the board of commissioners of Switzerland county and an appeal then taken to the Switzerland Circuit Court. A change of venue was taken to the Ripley Circuit Court and then to the Jennings Circuit Court where a trial was had, and a finding and judgment given in favor of appellee. The court found that appellee received 346 votes and the appellant 343 votes.

The error relied upon for reversal, is that the Jennings Circuit Court erred in overruling appellant's motion for a new trial.

The appellant contends: (1) That the decision of the court is not sustained by sufficient evidence; (2) the decision is contrary to law; and (3) that errors of law occurred at the trial to which appellant at the time excepted in each of the following particulars: (1) In overruling appellant's objections to the admissibility in evidence, and the counting of ballots produced and offered

as evidence at the trial; (2) in overruling appellant's objections to exhibits, being ballots 1, 2, 4, 8, 9, 10, 16, 17, 18 and 19; and (3) the court erred in sustaining appellee's objection to the introduction in evidence of exhibits (being ballots) 5, 6, 13, 14 and 28.

It was stipulated and agreed at the trial that appellant had received 335 legal ballots and appellee, 336 ballots. This stipulation and agreement was made subject to the objection of the appellant, generally to the counting of any ballots.

The appellant objected to the counting by the court of any ballots produced for the reason that they were not sealed in a bag when produced in court, and that the bags were torn open; that the disputed ballots were all thrown together and not in proper precinct bags (there were three precincts) and were not strung; that no tally sheets were produced in two of the precincts; that two ballots were cast at said election which were not produced; that the poll books show that more ballots were cast than people voted and that the papers and ballots produced can not be, and do not form, a correct basis to determine who received the highest number of votes.

The objections were overruled and proper exceptions taken.

We will first consider the question presented by appellant as to whether or not any of the ballots should be counted. The appellant contends that the identical ballots cast for township trustee were not produced at the trial of this cause and insists that there were two ballots missing.

The appellee contended that the evidence relating to two missing ballots was not admissible for the reason that there was no affirmative answer setting up the fact that there were two missing ballots, and that any evidence relating thereto was not admis-

sible under the general denial. In view of the allegations of the appellee's complaint or statement for contest wherein he stated that he received a majority of all the votes cast for township trustee, and that all the ballots cast at said election were preserved and in the custody of the officer entitled to have charge of the same, we feel that the answer of general denial put this fact in issue, and that the evidence pertaining thereto was competent. In any view it would be competent to show that the ballots had been properly preserved.

The evidence on the question as to missing ballots was conflicting, and as it presents a question of fact for the lower court, it will not be disturbed on appeal, unless it is clearly erroneous. *Lexington & B. S. R. Co.* v. *Ford Plate Glass Co.* (1882), 84 Ind. 516; *Shular* v. *State* (1886), 105 Ind. 389, 4 N. E. 870, 55 Am. Rep. 211; *Pedigo* v. *Grimes* (1888), 113 Ind. 148, 13 N. E. 700; *Louisville & Chicago R. R. Co.* v. *Wood* (1888), 113 Ind. 544, 14 N. E. 572, 16 N. E. 197.

The evidence shows that after the election the ballots were delivered by the inspectors of the different precincts on the night of the election to the board of election commissioners. Eugene T. Broadwell, who was clerk of the Switzerland Circuit Court on November 4, 1930, and ex-officio clerk of the board of canvassers, stated that the respective inspectors of the township brought the ballots of Craig Township to his office on the night of November 4, 1930, and after the votes were canvassed the ballots were placed in a box prepared for that purpose in the clerk's office, and locked. Mr. Broadwell, Lea Wright, and James K. Dangley were the members of the board of election commissioners. There were two locks to the box. Mr. Wright had one key and Mr. Broadwell had the other. Mr. Wright was of opposite politics to Mr. Broadwell. The keys were not alike, and neither key would unlock

both locks. The ballots remained in the box until the judge of the court ordered them produced in court for recount before the board of re-count commissioners. Wright and Broadwell took the ballots to the re-count commissioners. After the re-count, the ballots were put back in the packages and sealed and put in the box by Wright and Broadwell, and each one taking a key. They were again taken to the auditor's office for the contest before the commissioners. After the board of commissioners finished their work, Wright and Broadwell took the ballots back to the clerk's office, placed them in the box, and locked the same. They remained there in the box until Wright and Broadwell produced them, on order of the court, in the Jennings Circuit Court. When they were taken to the Jennings Circuit Court, the ballots were placed in a box by Wright and Broadwell. The box was rather small and necessitated them to press the ballots down in the box in order to get them in. This manner of handling doubtless caused some of the sealing wax to be broken as complained of. This box was again securely locked and kept locked until delivered to the circuit court of Jennings county.

It appears from the evidence at the time the ballots were delivered to the clerk's office, the night of the election, some were wrapped in paper, some in packages, some in sacks, and some tied with twine. It also appears from the evidence that when the clerk first received the ballots, they had not been as carefully handled as they should have been, but he received them as they were, and as being all the ballots cast in the township. The ballots and packages were first presented to the re-count commissioners; then to the board of commissioners, and then to the circuit court of Jennings county. It would only be natural that during the handling of the packages and ballots and the sealing and re-sealing of the same, on these occasions, that some of the seals

might be broken and the packages torn and mutilated. The evidence shows, however, that during all the time the clerk had charge of the ballots they were under lock and key and had been kept intact. The evidence further shows that there was an honest and good faith effort on the part of those in charge of the ballots to preserve them as the law directs and they did so. There is no specific evidence to show that the ballots had been tampered with in any way, and no evidence from which we might infer this fact. The presumption is that the inspectors, the clerk, and all others who were legally in charge of these ballots at any time, performed their duties as the law directed them to do.

In the case of *State ex rel.* v. *Thornburg* (1912), 177 Ind. 178, 97 N. E. 534, the court said, in speaking of the preservation of ballots, that: "In the absence of any specific evidence as to their having been tampered with, we are bound to presume that they have been honestly preserved, as they came from the hands of the inspectors."

It is true that there was some evidence that some of the bags containing the ballots had their seals broken and some slightly torn, but this is not convincing that the ballots had been tampered with.

The fact that the tally sheets were not produced could not materially affect the result of the contest. The ballots were the controlling factors and not the tally sheets.

The appellant quotes from Judge Cooley's Constitutional Limitations, p. 625, as follows: "If, however, the ballots have not been kept as required by law, and surrounded by such securities as the law has prescribed with a view to their safe preservation as the evidence of the election, it would seem they should not be received in evidence at all." Accepting this as a correct statement of the law then it can be stated as the

law, that if the ballots have been kept as required by law, and surrounded by such securities as the law has prescribed with a view to their safe preservation as the best evidence of the election, then they should be received in evidence. The evidence in the instant case shows that the ballots have been substantially kept as required by law and were therefore competent evidence.

It was stipulated and agreed that the contestor, Clyde Drake, received 336 legal votes and that the contestee, Rolland Roberts, received 335 legal votes. There were twenty-eight ballots presented to the court, to which objections were made as not having been properly marked or as bearing distinguishing marks.

Before considering each separate ballot which is before the court, we desire first to set out what we deem to be the law governing the questions before us as set out in the reported cases.

In the case of *Spaulding* v. *Romack* (1916), 185 Ind. 112, 113, 113 N. E. 229, the court said: "A voter will not be deprived of his vote by mere inadvertence, mistake, or ignorance on his part if an honest intention is ascertainable from the ballot; and the intention of the voter will be given effect, although the marking of the voter does not conform strictly to the provisions of the statute on that subject. . . . It has been held that a distinguishing mark that will invalidate a ballot is such a mark as fairly imputes upon its face design and dishonest purpose, and the slight soiling of a ballot which reasonably appears to have been the result of accident or want of due care by the voter in that regard is not sufficient to condemn it if otherwise fair."

In the case of *Borders* v. *Williams* (1900), 155 Ind. 36, 57 N. E. 527, the court said: "It is purity of election, and a free and honest expression of the voters' will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the gen-

eral appearance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained."

We will now consider the challenged ballots, and having in mind the law as just stated.

The appellant objected to the counting of exhibit (1) for the reason there was a very short blue pencil mark, or dot on the back thereof. It appears that this pencil mark might have been made by the pencil falling on the ballot, or by accidently coming in touch with the pencil of the voter, or clerk. This ballot is clearly valid and was properly counted for appellee, Drake.

Exhibit (2) is objected to by appellant for the reason there is a distinguishing mark made near the tail of the Democratic emblem. This mark is scarcely visible without close inspection, and clearly not a distinguishing mark. The mark is very dim. If made by a blue pencil, it was a very slight touch of the pencil and with no apparent intention to make a distinguishing mark. The ballot was properly counted for appellee, Drake.

Exhibit (3). This ballot is marked in the circle surrounding the Democratic emblem by two distinct, and parallel lines crossed at right angles by another line. The ruling of the court in refusing to count this ballot was proper for the reason that the marking was clearly a distinguishing mark.

Exhibit (4) was objected to by appellant claiming that the marking within the square for Dean S. Adams was a distinguishing mark. One of the lines, making the cross at the extreme end seems to have been made with a split pencil. It appears that the voter in this case made an honest effort to com-

ply with the law, and this vote should be counted as it was by the court for the appellee, Drake.

Exhibit (5) was objected to by appellee, Drake. In the square opposite the name of Marian Sharp, for justice of the peace, it appears that one of the lines making the cross is very dim, compared to the other line, and at the end thereof there is a distinct mark. We do not think this is a distinguishing mark as it may have been made with a defective pencil. The mark made in the square for Constable Everett Scudder, is an entirely different marking. One of the supposed lines is not a line at all but rather in the shape of a prolonged "O", and the line crossing this is made with more than one distinct stroke of the pencil. It clearly shows that the voter made no honest effort to comply with the law in reference to marking the ballot. The court was correct in refusing to count this ballot.

Exhibit (6) for all purposes is practically the same as exhibit (3), and the ruling of the court was correct.

Exhibits (7) and (12) show that the crosses were made without and not touching the circle. The ruling of the court in not counting these was correct.

Exhibits (8), (9) and (10) are practically the same in character and shows a substantial compliance with the law, and were legal ballots as the court held.

Exhibit (11) was a mixed ticket and for each candidate voted for, the cross extended the square and one square contained two parallel lines, and a third line crossing the parallel lines. The ballot was properly excluded.

Exhibit (13) shows a small cross within the square opposite the name of Rolland Roberts. It appears to have been a good faith effort with a dull pencil to make a cross, and it should have been counted for appellant.

Exhibit (14) shows a very heavy cross in the circle, and each line of the cross having been made twice. The ruling of the court was correct as to this ballot.

Exhibit (15) is objected to for the reason that it bears only the initials of one poll clerk. This objection was properly overruled. One initial of one of the poll clerks is very dim, but on close inspection it can be made out. The vote was properly counted.

Exhibits (16), (17) and (18) are all made very similar, except in exhibit (18), the cross is within the square instead of the circle. These ballots all show an honest effort to comply with the law and in our judgment are not open to criticism. If such ballots are to be disregarded, then a voter is on very slippery ground when he attempts to vote his honest convictions. The ruling of the court was correct on each ballot.

Exhibit (19) shows an imperfect cross and looking more like the letter "V." Many reasons—such as dim light, or inability to see well, or lack of experience in voting may have caused this, but there is nothing to show that the voter did not make a good faith effort to comply with the law, and the ruling of the court was correct as to this ballot.

Exhibit (20) is within the same class as exhibits (3) and (6), and the ruling of the court as to this exhibit was clearly correct.

Exhibit (21) shows that one the lines in the square opposite the name of appellant, Roberts, was evidently made with a split or broken pencil, but the whole ballot shows a substantial compliance and an honest effort to cast a legal vote. There was no error committed by the court in its ruling on this vote.

Exhibit (22) shows a cross made in the same manner as exhibit (21), except in exhibit (22), the cross is

within a circle. There was no error in the ruling of the court on this exhibit.

Exhibits (23) and (24) each show the cross slightly blurred, but these ballots are scarcely open to even criticism, and were properly counted.

Exhibits (25), (26) and (27) are very similar. Exhibit (25) shows that the cross, in the square opposite the name of John J. Griffith, was probably made with a split or broken pencil, which reasonably shows an honest effort on the part of the voter to comply with the law. The court properly counted this ballot.

Exhibits (26) and (27) contain practically the same markings as exhibit (25), except the crosses are made within the circle. These ballots were properly counted by the court.

Exhibit (28) show two lines above the Eagle within the circle which forms the lines of the letter V, and the lines below the Eagle form the lines of the letter V. The lines below and above the Eagle do not meet. This ballot shows that there was no good faith effort to comply with the law by the voter, and the ballot was properly rejected.

Of the twenty-eight votes challenged, we find that nine should be counted for the appellant, Roberts, and ten for the appellee, Drake. It was agreed that appellant, Rolland Roberts, received 335 legal votes, and adding nine thereto gives him 344 legal votes. It was agreed that appellee, Clyde Drake, received 336 votes and adding ten therto gives him 346 legal votes. Nine votes were illegal and not counted.

The said Clyde Drake, having received a majority of all the legal votes cast, is the duly elected trustee of Craig Township, Switzerland County, Indiana.

Judgment affirmed.