CONLEY *v.* HILE.

[No. 26,094. Filed December 12, 1934. Rehearing denied February 18, 1935.]

*James L. Harman, Oscar Jay, Orrin H. Markel,* and *Ray Deahl,* for appellant.

*Verne G. Crawley,* and *Davis & Schaefer,* for appellee.

FANSLER, C. J.—Appellee contested the election of appellant as judge of the Elkhart superior court. There was a judgment for appellee. The county canvassing board certified appellant to have been elected by nine votes upon the returns made by the precinct election

boards, and he was commissioned by the governor. Appellee instituted proceedings for a recount. The recount commissioners, as a result of the count, certified the contestor as receiving a majority of twenty-one votes. The county commissioners found for the contestor. There was an appeal to the circuit court, and it appears from the conclusions of law that the court, from its examination of the ballots introduced in evidence, found the contestor to have received a majority of one hundred and twelve votes. There was judgment accordingly that the contestor was duly elected. It was stipulated and agreed that the contestor, appellee, had received 9206, and the contestee, appellant, 9152 legal and uncontested ballots. 2139 ballots were introduced in evidence, of which 1249, 667 for appellant and 582 for appellee, were rejected by the court and not counted.

Appellant moved to dismiss the action on the ground that a judge of a superior court is not a county, township, or municipal officer, and that, therefore, the circuit court had no jurisdiction to try the case. The statute concerning elections, §7597 et seq., Burns 1926, provides in §7612 (§29-2201 et seq., Burns 1933, §7413, Baldwin's 1934) :

".  .  .  all contests for district and circuit offices, not otherwise provided in this act, shall be tried in the county giving the largest vote for such office at such election;  .  .  ."

There is a prior provision for contesting the seat of the person elected to the house of representatives, but there is no other provision concerning judges or prosecuting attorneys, and the section must be deemed to apply to a contest of the office of judge of the circuit or superior courts and of prosecuting attorneys. While the question was not raised, this court recognized such to be the rule in the case of *William* v. *Bell* (1915), 184 Ind. 156, 110 N. E. 753.

Appellant moved to suppress the certificate of the

recount commissioners for the reason that the petition for the recount did not show that the petitioner was an elector, and that, since only electors are entitled to contest an election, the petition for recount should not be granted. The statute, §7587, Burns 1926, §29-2101, Burns 1933, §7388, Baldwin's 1934, provides that any candidate for office desiring to contest the election, may petition for a recount. There is no provision that the petition must show that he is an elector, or qualified to hold the office. It merely requires that he shall have been a candidate for the office. The next section provides that:

"Upon the petition of such candidate, duly verified, showing that he desires to contest such election, and honestly believes that there was a mistake or fraud committed in the official count, and that he desires a recount of the ballots cast at said election for the office for which he was a candidate, and upon proof that he has served a written notice upon the opposing candidate of the time and place of such application, five days before the hearing, and upon his furnishing a written undertaking, with sufficient freehold surety, that he will pay all the costs of such recount, the court or judge shall grant the prayer of said petition and order said recount to be made."

Appellant contends that, because the petition did not allege that the petitioner "honestly believes that there was a mistake or fraud," it is not sufficient. The word "honestly" is surplusage. One either believes a thing or does not believe it, and it is inconceivable that one might "dishonestly" believe something to be true. The petition was verified upon information and belief, and this sworn statement that he believes there was a mistake or fraud is sufficient, and would be no stronger if it had contained the word "honestly." The petition is sufficient.

In his amended motion to suppress the certificate of

the recount commissioners, it is alleged that the recount board adjourned during certain intervals, notwithstanding the legislative provision that no adjournments shall be had until the count is finished. It appears further that none of the keys to the receptacles in which the ballots had been placed were ever delivered to the Democratic member of the board of canvassers. But it is not alleged that the merits of the recount were affected by such irregularities, and the rights of the contestor cannot be forfeited or controlled by irregularities on the part of officials for which he was in no way responsible and which he could not control.

The purpose of the recount and contest statutes is to determine the result of the election as evidenced by the legal ballots of the qualified voters. In the absence of a showing of an invasion of the rights of the parties, the statutes will be liberally construed to accomplish their purpose, and mere irregularities on the part of officers will be disregarded.

Appellant predicates error upon the refusal of the court to grant him a trial by jury. It is well settled that election contests are not triable by jury. *Pedigo* v. *Grimes* (1888), 113 Ind. 148, 13 N. E. 700, and cases there cited; *Gordon* v. *Corning* (1910), 174 Ind. 337, 92 N. E. 59.

The other questions presented by appellant involve the sufficiency of the findings of fact, and the sufficiency of the evidence; that is to say the correctness of the ruling of the trial court as to the legality of certain ballots. The court made twenty-four special findings of fact, upon which were announced six conclusions of law. In the findings of fact the court described approximately two thousand ballots, going into detail as to the manner of marking, but in all but a few instances failed to find the ultimate

fact as to whether the marking constitutes a distinguishing mark such as is condemned by the statute and the decisions of this court. Following these findings, and in the first four so-called conclusions of law, the court described by number more than two thousand ballots, which are declared to be either legal or illegal votes for the plaintiff or the defendant. The special findings in most instances are not sufficient to sustain these conclusions since ultimate facts are not found. The last two conclusions of law are: "That the Contestor has a majority of one hundred twelve (112) of the votes cast for the office of Judge," and that "The law is with the Contestor." But if this cause were reversed because of the insufficiency of the special findings, it would no doubt come here again on appeal, involving the merits of the ballots which mainly constitute the evidence, and eventually this court would be required to pass upon the merits of the case. Therefore, no good purpose would be served in remanding the case for new trial. Both appellant and appellee seem to take this view for in their briefs both request that we pass upon the merits of the ballots involved. An examination of the ballots which are questioned has involved much labor. Approximately two thousand separate ballots were examined.

On the merits, the principal contention of appellant involves the ruling of the trial court upon the numerous ballots described in findings numbered 12, 20, and 21. Finding 12 deals with 530 ballots; finding 20, with 420 ballots; and finding 21, with 155 ballots. All of these ballots are marked either in the circle at the head of the party column or in the squares in front of the names of the candidates. The crosses are very heavy, or heavily retraced, or one leg of the cross consists of one line and the other leg of double lines or retraced lines, and in some instances

the legs of the cross consist of several lines each. Included in other findings are cases of mutilation by attempted erasure, and instances where the ballot is marked with a single line or other device, which clearly does not meet the statutory requirement. Of the ballots in findings 12, 20, and 21, 244 were held good and counted by the trial court, while 861 were held bad and were not counted for either candidate. We feel that in many instances the trial court adhered to too strict a rule in holding that ballots bore distinguishing marks. It was said by this court in the case of *Spaulding* v. *Romack* (1916), 185 Ind. 105, 112, 113 N. E. 229, referring to §7497, Burns 1926, §29-1125, Burns 1933, §7140, Baldwin's 1934:

> "A strict and literal construction of this section of the act would necessarily result in the nullification of practically all of the votes cast, for the reason that it would be almost impossible for a voter to make lines absolutely straight, make them of exactly the same length and make them cross at angles precisely measuring to those formed by the cross which is set out in the statute. Under a more liberal doctrine, courts have been inclined to treat the illustration as used in the section as being merely directory. Accordingly a substantial compliance with the design provided by the statute is all that has been required. A voter will not be deprived of his vote by mere inadvertence, mistake, or ignorance on his part if an honest intention is ascertainable from the ballot; and the intention of the voter will be given effect, although the marking of the voter does not conform strictly to the provisions of the statute on that subject."

And again (on p. 113), in discussing certain ballots objected to on the ground that they bore distinguishing marks:

> "On each of the ballots there appears a slight pencil line or dot at some places on the face of the ticket. These lines or dots, however, are of such a character as to forbid the belief that they were

made with design; on the contrary, they appear to have occurred by accident. While technically they are marks other than crosses within circles or squares as designated by the statute, under the view taken by our courts they are not distinguishing marks such as the act contemplates shall render the ballot void. It has been held that a distinguishing mark that will invalidate a ballot is such a mark as fairly imputes upon its face design and dishonest purpose, and that the slight soiling of a ballot which reasonably appears to have been the result of accident or want of due care by the voter in that regard is not sufficient to condemn it, if otherwise fair."

In the case of *State ex rel.* v. *Thornburg* (1912), 177 Ind. 178, 187, 97 N. E. 534, in discussing a challenged ballot, this court said:

"It is manifest that there are three strokes of the pencil, one from the top to the left, one from the top to the right, and a second close to, and parallel with the latter, to, and slightly beyond, the point of crossing the first oblique line, where it turns slightly, and is on the same alignment with the second line, and near the end diverges slightly. It appears as if the voter had not been sure of the second mark, and had attempted to make it more distinct, though it is possible that it may have been intended as a distinguishing mark, but the rule should not be so rigid as to disfranchise an honest voter on a mere possibility."

A construction of the statutes consistent with the language of these opinions has been embodied in an interpretation of the election law by the state board of election commissioners, which is printed and distributed to election officials for their information and instruction, and that interpretation has been concurred in and approved by the two major political organizations.

And again we adopt the language in the case of *Spaulding* v. *Romack,* p. 111, *supra:*

"To adopt at this time, . . . a strict and technical view in the consideration of what are distinguishing marks, within the meaning of the statute, would tend to work great injustice and hardship, as it would completely revolutionize a method of voting and canvassing votes employed and observed for years. Such hardship would be out of all proportion to the good to be accomplished."

While the statutes seek to keep the voter's ballot secret, so as to prevent corruption in elections, its primary purpose is to provide a means for the selection of officers by the free and untrammeled choice of honest, qualified voters; and, while a ballot which is intentionally mutilated, or on which the marking does not occur in the space provided by statute, or which is marked with characters other than those provided by statute, cannot be counted regardless of the apparent honesty and good intention of the voter, ballots will be counted which indicate an effort to comply with the statutory requirement as to the manner of marking, notwithstanding variation from the mark made by the average individual caused by unskillfulness, physical infirmity, bad eyesight, or light, or conditions not conducive to accuracy; and where markings are in the proper place, and there is an effort to make the statutory cross-mark, irregularities in the marking will be attributed to those causes unless the ballot upon its face fairly imports an intentional dishonest purpose.

With these rules in mind, we have carefully examined all of the ballots which the parties have questioned in their briefs. We are impressed by the fact that these ballots came from practically all of the many precincts of Elkhart county, and it is clearly apparent that there was at least no organized or systematic effort to distinguish ballots by the methods of marking. No two ballots are marked exactly alike, but the variations from

the ordinary method of marking may be roughly classified into groups. One such group is characterized by very heavy crosses made by numerous retracings with the pencil in the making of one or both members of the cross. Another has very light crosses in which the marks barely touch or cross each other. In another the crosses are made of irregular or wavy lines curved at the end, possibly due to dragging the pencil when it should have been lifted after making one line and before beginning another. Such markings are found on ballots voted for both appellant and appellee in almost equal proportion, which to us indicates not a design to unlawfully distinguish the ballot, but merely unskillfulness, or one of the other causes referred to above. It is inconceivable that more than two thousand ballots challenged by the parties were all intentionally marked with the corrupt purpose of identifying them, and we believe it is almost equally inconceivable that all of the ballots rejected by the trial court were marked with such a purpose. To extend this opinion to the great length necessary to discuss all of the ballots which we have examined would be entirely unjustified, and, as we believe, unnecessary. We will confine ourselves largely to describing ballots which we believe are illegal and void and which have been questioned in the briefs. It will be understood that there are certain ballots held invalid by the trial court which are clearly invalid, and the invalidity of which is not questioned here.

Appellee's exhibit 91 and appellant's exhibit 111 are almost identical, each containing more marks than constitute a cross in the square at the bottom of the ballot. These marks were evidently made because of difficulty in using the pencil without sufficient rest for the arm. We believe they are both valid ballots and have counted them.

Appellee's exhibit 214 has a duplication of one of the members of the cross in one of the squares, which seems to have been caused by bad light or unskillful handling of the pencil, or in an effort to retrace. It is a valid ballot.

Appellee's exhibit 517 has an almost square smudge, made by rubbing the pencil back and forth, in the square in front of the name of one of the candidates for county councilman-at-large. Through it, and barely projecting at the sides, is a faint line. There were six candidates for this office, the voter being entitled to vote for three. He voted for four, however, and if this marking had been a regular cross the ballot would be valid for all candidates for whom it was voted except for the candidates for county councilman-at-large. The smudge in question is so different from all of the other markings on the ballot that it seems impossible to account for it on the theory of accident, bad eyesight, bad light, a faulty pencil or a cramped writing position. It seems to have been made in an effort to blot out or eradicate a cross first made in this square. It must be treated as a distinguishing mark, as in the case of drawing a circle around a cross, and the ballot must be held invalid.

Appellee's exhibits 584 and 630 have duplicate marks for one member of the cross in the first square, made by a faulty pencil, or in an effort to retrace in bad light, or because of bad eyesight. We have counted the ballots.

Appellee's exhibits 68, 672, 752, and 753 have an erasure of a blue pencil mark, which constitutes a mutilation. The ballots are void.

Appellee's exhibit 757 shows some duplication of markings, which may be accounted for by bad eyesight, faulty pencil or bad light. It is a valid ballot.

Appellee's exhibits 528, 766, and 946, and appellant's exhibit 409 each have two distinct crosses in one of the squares. The other squares are marked with a single cross. These ballots are invalid.

Appellee's exhibits 27, 34, 156, 160, 230, 252, 917, 994, 1029, and 1064 contain a single line in one or more of the squares in front of the names of the candidates, with no apparent effort to make a cross. This is a distinguishing mark, and the ballots are invalid.

Appellee's exhibit 1000 is a split ballot, voted for three candidates only. In one of the squares, in lieu of a cross, is a figure resembling a nine-point star. The other two crosses are made with two clear strokes of the pencil. The difference in the marking in question cannot be accounted for except by intention to make a mark otherwise than in the statutory manner, and we have not counted the ballot.

Appellee's exhibit 354 was properly counted for appellant.

Appellee's exhibit 879 shows all of the crosses well made, with a steady hand, except in one square where the cross is made by two distinct, independent, well separated lines crossed, by one line. Upon close scrutiny it seems impossible to account for the marks on the theory of bad eyesight, bad light, inexperience with the use of a pencil, or old age. The ballot must be held void.

Appellee's exhibits 619 and 968, and appellant's exhibit 558, have slight tears or abrasions in the circle where the cross is made, evidently caused by marking on a rough board, or by a rough pencil. There is no indication of an intentional mutilation, and it is entirely possible that the voters were not conscious of marring the ballots. They are counted.

Appellant's exhibits 30 and 931 are marked in the

circle with three independent lines, each bi-secting the circle and touching it at substantially equi-distant points. The extra mark cannot be attributed to an effort to retrace one of the lines, but must have been purposely made. This cannot be said to be a good-faith effort to comply with the statutory requirement. Appellant's exhibit 1038 is similar, except that there are four intersecting lines instead of three. These ballots are invalid.

Appellant's exhibit 457 has a large cross in the circle, made with retraced or duplicating lines. There is a faint red perpendicular line running down to the center of the circle, where there is a faint reddish smudge. The line could hardly have been made by a pencil or pen. It is of the same color as the rubber stamp mark with which the reporter in the court below stamped the exhibits. We are convinced that the mark was made in some accidental manner, and not by the voter. The ballot should be counted. We find a similar red smear on plaintiff's exhibit 629, at the top and to the right of the Democratic circle.

Appellant's exhibits 856 and 865 have a large cross in the circle, and, paralleling one of the members of the cross and one-half an inch therefrom, there is a line about one inch long that does not touch the cross. All lines are firmly made with a single mark of the pencil. This latter line cannot be attributed to an effort to retrace, but seems to have been intentionally made. It must be treated as a distinguishing mark, and the ballots are not counted.

Appellant's exhibit 32 is marked with six or seven intersecting lines across the circle in such a manner as to create a nine or ten point star. It cannot be treated as a good-faith effort to mark the ballot in a statutory manner, and the ballot cannot be counted.

On appellant's exhibit 852 the circle has been almost filled with a network of blue pencil lines, made in an unsystematic manner, which do not even resemble a cross. The ballot cannot be counted.

Appellant's exhibit 1083 was not counted by the court below. It is sufficient on its face, but on the back it has the following memoranda: "5 Mutilated Ballots. Frank B. Alleman, Judge. James Richcreek, Inspector." It must be presumed that this memoranda was made by the election officers after the ballot had been voted and counted. It cannot reasonably be charged against the voter, and the ballot should be counted, and we have counted it.

Appellant's exhibit 343 was not counted by the court below. It has a cross in the circle, and attached perpendicularly to the horizontal member of the cross, at the left end, is what appears to be a short, indistinct, blue pencil mark, which would give the cross the appearance of a very broad flat figure "4" with the two upright marks parallel. Upon examination, it appears that the above described mark, which is dim, was probably made in an effort to make the perpendicular part of the cross with a badly sharpened pencil. When the pencil had passed over the paper about $\frac{1}{4}$ of an inch, another effort was made to the right by pressing the pencil so hard that it is shown through the paper. Thereafter the horizontal line was made. It would appear that the marks were made in a good-faith effort to make a cross. The ballot is counted.

Appellant's exhibit 850 has a black pencil circle around the cross in one of the squares. There is an attempted erasure of a blue pencil mark in the square opposite. These are distinguishing marks, and the ballot is invalid.

Appellant's exhibits 82, 117, 528, 671, 832, 1041, 1054, 1072, and 1078, and appellee's exhibit 891, con-

tain a single line in one or more of the squares in front of the names of candidates, or in the circle, with no apparent effort to make a cross. This is a distinguishing mark, and the ballots are invalid.

Appellant's exhibit 576 is a split ballot, with very regularly made crosses in all of the squares except one. In that square is a figure resembling the figure "4", the upper left line of which is very dim. The marking is in the square just below and to the right of the only square which is marked in the left-hand column of candidates. We are unable to impute an intention to distinguish the ballot to the voter on account of this marking. The ballot is good.

Appellee's exhibits 8, 13, 14, 114, 115, 116, 128, 148, 174, 407, 409, 410, 411, 698, 856, 864, 888, and 1055, and appellant's exhibits 10, 35, 36, 61, 108, 121, 167, 215, 217, 222, 223, 244, 257, 321, 364, 444, 445, 451, 556, 640, 711, 742, 748, 907, and 929 have crosses in the circle at the head of the party column, and also crosses or other marks in one or more of the squares in front of the names of candidates. These ballots are invalid.

Appellee's exhibit 713 is a portion of a ballot. The upper part, including the name of appellant, is missing. The name of the appellee appears with a cross-mark in the square in front of the name. How the ballot was marked, if at all, in the missing portion, is not ascertainable. It was rejected by the trial court, and we cannot say that this was error. The ballot will not be counted.

Appellee's exhibits 36, 145, 545, 924, 1028, 1062, and 1065, and appellant's exhibits 158, 189, 788, 904, 1001, 1060, 1067, 1070, 1079, and 1081 have letters, initials or names written on the back of the ballots in ink or blue pencil. These are distinguishing marks, and the ballots are invalid.

Appellee's exhibits 189, 193, and 194 have marks, made with a black pencil, on the back of the ballots, by the election board during the counting, and not made by the voters. These ballots were properly counted by the trial court.

Appellee's exhibit 442 has the name "H. R. Weaver" in the lower right-hand corner on the back, below the initials "D. A. W.", which seem to be the initials of one of the poll clerks. No doubt, Mr. Weaver was the other poll clerk, but this full name written on the back of the ballot violates the statutory requirement.

Appellee's exhibits 1009, 1021, and 1022 are mixed ballots; 1009 and 1022 voted for both opposing candidates for sheriff, and 1021 voted for both opposing candidates for representative. They have various writings and figures on the back, made with a lead pencil. These writings and figures were clearly made by the election boards as part of their computation in counting the ballots, and they should be counted. *Borders* v. *Williams* (1900), 155 Ind. 36, 57 N. E. 527.

Appellant's exhibit 12 has an attempted erasure of a cross-mark in the square in front of the name of one of the candidates for sheriff. The attempted erasure has worn a hole in the paper. There is a cross in front of the name of the other candidate for sheriff. This ballot is bad because mutilated.

Appellant's exhibit 112 is marked with a light blue pencil cross in the Democratic circle upon the body of the emblem, which is printed in black ink. The mark is so light that against the black ink of the emblem it is discovered with difficulty. On the back of the ballot, near the center, is written in a loose, flowing hand, in ink, what the trial court in its finding describes as "You voted", but an examination

of the writing discloses that there is no word "You" before the word "voted", but there are two characters, one of which seems to be the capital letter "U", following which is the small letter "n"; that is, the writing is "Unvoted." This, doubtless, was written by a member of the election board, and indicates to us that in examining the ballot they did not discover the cross-mark above described and believed the ballot was blank, not having been voted for any one. In view of these facts, the ballot should be counted as a legal ballot for appellant.

On the back of appellant's exhibit 210 are two horizontal lines between which are the figures "100"; and below the lower horizontal line is the letter "D", all made in black pencil. The trial court found that these were not made by the voter. They were apparently made, following a custom of the election board, observable on the ballots, of noting the number in a pile of ballots on the top ballot. This is a valid ballot and we have counted it for appellant.

On the back of appellant's exhibit 310, in the lower right-hand corner, appear the initials "A. D." and "E. K." and "E. K.", one of the clerks having duplicated his initials. This is sufficient to invalidate the ballot.

Appellant's exhibit 1035 is voted for two opposing candidates for coroner. On the back of the ballot is written in black pencil "Coroner not counted." This apparently was written by the poll clerks, but we discover an attempted erasure of a blue cross-mark in the square in front of the name "Andrew J. Hickey", which amounts to a mutilation. The ballot is invalid.

Appellant's exhibit 1049 is a mixed ballot. It has a smudge in one of the squares, almost completely filling

it, made with a blue pencil in an effort, no doubt, to obliterate a cross-mark already made. This is a distinguishing mark, and the ballot is invalid. Appellant's exhibit 709 has a cross-mark in the square in front of the name "Orin B. Weaver", candidate for county surveyor; and in the square in front of the name of his opponent is a single straight line. This is a distinguishing mark, and the ballot is invalid.

Finding 16 deals generally with ballots in which there has been an attempted erasure. We have examined the 65 appellee's exhibits considered, and which were not counted by the court below, and find no error in the court's ruling. We have examined the 53 appellant's exhibits dealt with, and find that the court correctly refused to count all of them except two, namely 908 and 932. One of these has a smudge made by a thumb print over one of the squares, and the other has a slight blur over the cross in one of the squares, which cannot be definitely said to be caused by an attempted erasure.

Finding 17 deals with 72 of appellee's exhibits and 44 of appellant's exhibits, all of which were properly rejected and not counted for the reason that on the back of the ballots appear the initials of only one poll clerk. *Blue* v. *Allee* (1916), 184 Ind. 302, 111 N. E. 185.

Appellee's exhibit 95 has, in addition to a cross, in the bottom square on the ballot a short line paralleling the upper end of one of the members of the cross. There is another very light similar mark in one of the other squares. The extra mark was probably caused by indecision, and does not indicate an unlawful purpose. The ballot is valid.

Appellant's exhibit 67 is evidently questioned on the theory that there is but a single line in one of the

squares, but the trial court discerned, and we discern, a very faint line crossing the line mentioned. All of the members of the crosses from the upper left to the lower right are very faint. We think the ballot is sufficient.

Appellant's exhibit 185 was voted for both opposing candidates for county treasurer, and over the cross in one of the squares is a circle in blue pencil. There are also some black pencil marks. The ballot is invalid.

Appellant's exhibits 691 and 998 are marked with black pencil crosses over which a blue cross has been made. These ballots are invalid.

Appellant's exhibit 216 has four, and appellant's exhibits 853 and 927 each has two, separate and distinct crosses in the circle. The ballots are invalid.

Appellee's exhibits 397 and 903, and appellant's exhibits 62 and 166, have crosses made with a black pencil. These ballots are invalid.

Appellant's exhibits 97, 104, and 825 have a cross made with a blue pencil on the emblem in the circle. Some of it is not discernible in a bad light. There is an additional cross in the white part, made inside the circle, but not touching the emblem. These ballots are invalid.

Appellee's exhibit 12 is a mixed ballot. It has a cross in one of the squares, but the marks in the other squares cannot be explained on the theory that they were intended for a cross. The marking does not comply with the statute, and the ballot is invalid.

Appellee's exhibits 25, 77, 163, 209, 305, 871, 887, 934, and 990, and appellant's exhibits 31, 80, 195, 218, 224, 308, 584, 589, 665, 1004, 1040, and 1057, have one or more crosses outside of and not touching any circle or square. These are distin-

guishing marks, and the ballots are invalid. There are a number of ballots which have crosses outside the squares or circles, but which touch the squares or circles. These are valid ballots and have been counted where there is no additional cross that does not touch a square or circle.

Appellee's exhibits 208, 220, 425, 574, 635, 697, 1043, and 1056, and appellant's exhibits 695, 817, 1046, and 1071 have check-marks in one or more of the squares. This marking does not comply with the statute, and the ballots are invalid.

Appellant's exhibit 55 shows the crosses fairly well made except in one of the squares, where the cross is dissimilar to the other crosses; and in addition thereto there is a horizontal line striking out the abbreviation of the party name and crossing the center of the cross. The line cannot be accounted for upon any theory of inadvertence, bad light, bad eyesight, or inexperience in using a pencil. The ballot is invalid.

Appellant's exhibit 980 has a cross in the circle, and on the opposite side of the party emblem is a single line about $\frac{1}{4}$ inch long. All lines are firmly made. This latter line seems to have been intentionally made and must be treated as a distinguishing mark. The ballot is invalid.

Appellee's exhibit 78 is marked in the circle with a cross, surrounding which is a circle made with a blue pencil. This is a distinguishing mark, and the ballot is invalid.

Appellee's exhibits 1003 and 1008 have a check-mark in the column at the head of the ticket. This marking does not comply with the statute, and the ballots are invalid.

Appellee in his cross-errors contends that the court erred in counting certain ballots for appellant.

Appellant's exhibit 9 is marked in the circle with a cross in the form of an X. Across the top and bottom of the arms of the cross are horizontal lines as though the voter had attempted to make what printers call an upper-case X, and above and below this last described cross is a light line, such as a draftsman might make in shading. While it cannot be said that there is an evident intention to distinguish the ballot, yet this constitutes more than the X contemplated by statute, and must be construed as not conforming to the statute and the ballot should not be counted.

Appellant's exhibit 192 has in one of the squares, in addition to the cross-mark, a blur or wide pencil mark, the upper edges of which are fine lines, but the middle of which is a very light smear of blue. This was probably caused by the pencil breaking when an effort was made to make the cross. There is not another pencil mark on the ballot, which is a mixed one, that in any way resembles the mark in question. It must be attributed to accident. The ballot was properly counted.

Appellee complains of appellant's exhibit 220 because of a light, faint line in the lower part of the circle in addition to the cross made in the upper part. It was apparently made by the pencil accidentally touching the paper. The ballot was properly counted.

Appellant's exhibit 613 cannot be treated as being in the same category. The mark of the pencil is so heavy as to be visible through the ballot to the same extent as the marks making up the cross. It constitutes a distinguishing mark. The ballot is invalid.

Appellant's exhibit 616 has in the circle, in addition to the cross, a light mark which seems to have been made by the pencil accidentally touching the paper. The ballot was properly counted.

Through the top of one of the arms of the large cross at the head of the party column on appellant's exhibit 645 is a light blue pencil mark resembling the letter "C." It can be attributed to accidentally touching the paper with the pencil, and is not as heavy as the marks making up the cross. The ballot was properly counted.

Appellant's exhibit 955 has, in addition to the large cross in the circle, a line paralleling one of the members of the cross and about one-half inch distant therefrom. This line does not touch the cross, and was made with sufficient pressure of the pencil so that the mark shows through the ballot. It was evidently intentionally made and must be treated as a distinguishing mark. The ballot should not have been counted.

Appellant's exhibit 980 has in the circle, in addition to the cross, a dim, short line made by an impression of the pencil. The lines making up the cross are much more legible. The mark must be attributed to a bad pencil, and may well have been undiscernible in a dark voting booth. The ballot was properly counted.

On appellant's exhibit 1019 there is a light, horizontal mark in the shadow of the emblem in the circle, in addition to the large cross. It is not as heavy as the members of the cross and could have been made by accidentally rubbing the pencil against the paper. The ballot was properly counted.

Appellant's exhibits 26, 144, 173, 672, 775, 778, 926, 947, 999, and 1,000 are all characterized by very heavily made crosses, with heavy retracings, or attempts to retrace the lines. They do not contain multiple crosses as contended by appellee. All the marks made were made in retracing the lines, or in an effort to retrace. The marks are unskillfully made, indicating

unfamiliarity with use of the pencil, and, possibly, bad eyesight or infirmity. It is not required that a cross be made with merely two intersecting lines with single strokes of the pencil. The ballots were properly counted.

Appellant's exhibit 316 is complained of because the cross in the circle more nearly resembles the figure "4." At the left end of the horizontal line making up the cross there is a slight upward mark, or a mark that may have been made with a downward stroke of the pencil when put on the paper to make the mark. In other words, this line resembles a check-mark with a very long tail. Similar tails or marks appear on many ballots counted for both parties. This ballot was properly counted.

Appellant's exhibits 68 and 407 are mixed ballots, complained of because the lines making up the crosses on each ballot do not meet. On both ballots there is an indication that the marking was done on a rough board. Some of the lines are very light. There is evidence of a good-faith effort to properly mark the ballots. They were properly counted.

Appellant's exhibit 103 is complained of because the lines making up the cross in some of the squares do not meet, but to us they appear to meet, although the lines are dim. The ballot was properly counted.

Appellant's exhibit 629 is complained of because the cross does not touch the inner ring of the circle containing the emblem. It does, however, touch the circle, and the ballot was properly counted.

Appellant's exhibit 86 is complained of because the marking in one of the squares looks like the inverted letted "K." This is true. The marks were apparently made in an effort to retrace, and the ballot was properly counted.

Appellant's exhibit 632 is complained of because one

of the clerks has only one initial on the back of the ballot. An examination of other ballots indicates that this clerk made his initials "A. C." with one continuous line; that he completed the "A," took the line up and began the "C," but the pen ran out of ink and the "C" was not finished. The ballot was properly counted.

We have discussed in detail all of the ballots counted by the trial court for appellant, the counting of which was assigned as erroneous under appellee's cross-errors, except exhibits 241 and 260. Appellee has not pointed out in what respect these ballots are invalid, and we find no irregularity or illegality in them.

In computing the number of ballots, we have taken the uncontested ballots counted for each of the parties and have added thereto the total of the ballots held good and the total of the ballots held bad. From this total we have deducted the ballots which out of the whole group we have held bad, thus determining the number of legal ballots for each of the parties. It appears that appellant's exhibit 977 was counted as both good and bad by the trial court. Thus, in adding to the number of uncontested ballots the total of the ballots held good and the total of the ballots held bad by the trial court, we have one ballot more than was voted because of the duplication. We have, therefore, deducted one from the preliminary total in making our calculations. Appellee's exhibit 977 is not included in either the good or the bad ballots as found by the trial court, and, therefore, in order to find the correct number of ballots voted for appellee and considered by the court, we have added one. Our computation, therefore, is as follows:

For appellant we find uncontested ballots numbering 9,152, held good by trial court 416, held bad by trial court 667, making a total of 10,235; less exhibit 977, leaves a total of 10,234. From this we have deducted the ballots

held invalid in this opinion, numbering 185, which leaves 10,049 valid ballots cast for appellant.

For appellee we find uncontested ballots numbering 9,206, held good by trial court 474, held bad by trial court 581, making a total of 10,261. We have added exhibit 977, which is a valid ballot, making a total of 10,262. From this we have deducted the ballots held invalid in this opinion, numbering 208, which leaves 10,054 valid ballots cast for appellee.

Appellee, therefore, received five more valid ballots than appellant, and was elected.

We are impressed with the fact that in the case of a majority of the ballots objected to by each party, an almost exact counter-part could be found in the ballots voted for the objecting party. These ballots might easily have been eliminated from the record, thus saving much valuable time and great labor for the trial court and for this court.

Judgment affirmed.