**Donald E. HEFNER, Appellant–
Respondent Below,**

v.

**James D. SEARSON, Appellee–
Petitioner Below.**

No. 45A03–9110–CV–304 [1].

Court of Appeals of Indiana,
Third District.

April 21, 1992.

---

**1.** This appeal was not assigned to the writing Judge until March 2, 1992.

Charles E. Stewart, Jr., Crown Point, appellant-respondent.

Timothy R. Sendak, Crown Point, appellee-petitioner.

STATON, Judge.

Donald Hefner and James Searson, among others, sought the Republican nomination for mayor of Crown Point, Indiana in the May 7, 1991 primary election. The result of that election prompted both Hefner and Searson to seek a recount, and the trial court acceded to their respective petitions by appointing a Recount Commission. On May 30, 1991, the Commission retabulated the ballots and certified that Hefner and Searson each received 818 votes. Hefner challenged the Commission report, and the trial court ruled against him. It is from this ruling that Hefner now appeals, claiming the Recount Commission erroneously counted eight (8) absentee ballots that contained more than two (2) sets of certifying initials, contrary to state law.[2]

We affirm.

Hefner bases his claim that the ballots in question were improperly tabulated on the language of the following statutes:

(a) A ballot that is mailed must bear the circuit court clerk's official seal and signature or facsimile signature on the back of the ballot. Before the ballot is mailed:

(1) The two (2) members of the absentee voter board in the office of the circuit court clerk; or (2) The two (2) appointed members of the county election board or their designated representatives;

shall place their initials in ink on the back of the ballot. The initials must be in the persons' ordinary handwriting or printing and *without a distinguishing mark of any kind. No other initialing of the absentee ballot is necessary.*

(b) An absentee ballot that is voted before an absentee voter board under IC 3–11–10–25 or IC 3–11–10–26 must bear the seal, signature, and initials prescribed by IC 3–11–10–27.

2. Hefner is the aggrieved party to this appeal because, the day the trial court issued its ruling, the Crown Point Republican Precinct Organization met pursuant to statute and selected Searson as the Republican mayoral candidate to run in the general election held on November 5, 1991.

IND.CODE 3–11–4–19 (1988) (emphasis added). Also,

> Before a ballot is voted under [IC 3–11–10–25 or IC 3–11–10–26], it must bear the circuit court clerk's official seal and signature or facsimile signature and be initialed by the absentee voter board. The initials must be in ink on the back of the ballot, in the person's ordinary handwriting or printing, and *without a distinguishing mark of any kind. No other initialing of the absentee ballot is necessary.*

IC 3–11–10–27 (1988 & Supp.1991) (emphasis added).[3]

IC 3–11–10–25 requires certain voters to cast their ballots before an absentee voter board or have a member of the board visit the voter's home to receive the ballot. IC 3–11–10–26 allows certain absentee voters to cast their vote in the office of the circuit court clerk. Six of the questioned ballots were cast before the absentee voter board. The remaining two votes were submitted at the circuit court clerk's office.

 Hefner argues that the appearance of more than two sets of initials on the back of the ballots constitutes a distinguishing mark forbidden by IC 3–11–10–27. "A distinguishing mark is a mark or indication on the face of a ballot that appears to have been placed there by the voter in order to identify that ballot as the one cast by that particular voter." *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212, 1224. It is not disputed that the initials were placed on the reverse side of the ballot, and the evidence adduced before the trial court leads solely to the conclusion that the initials were placed on the ballots, after the vote was cast, by poll workers and members of the absentee voter board, rather than the voters. Clearly, the initials are not "distinguishing marks."

Hefner contends that the extra initials themselves render the ballots invalid, citing *Nicely v. Wildey* (1936), 210 Ind. 640, 5 N.E.2d 111, where our supreme court considered a similar issue. There the court held that it was improper to count a ballot

on which four sets of initials appeared. It is not clear from this opinion whether the initials were written by the voter or some other person, or whether the initials appeared on the front of the ballot. The *Nicely* court did, however, designate the initials as "distinguishing marks" requiring the invalidation of the ballot. The court further cited two cases that provided a full discussion of the law applicable to counting or rejecting ballots on the basis of distinguishing marks. *Id.* at 643, 5 N.E.2d at 113 (citing *Conley v. Hile* (1934), 207 Ind. 488, 193 N.E. 95, *reh'g denied* (1935); *Roberts v. Drake* (1933), 205 Ind. 425, 185 N.E. 285, *reh'g denied*). These cases speak to markings made by a voter on the *face* of the ballot, and comport with the definition of "distinguishing marks" set forth by our supreme court in *Wright, supra*. In fact, the court in *Conley* counted a vote that was inscribed, on the back of the ballot, with the following: "5 Mutilated Ballots. Frank B. Alleman, Judge. James Richcreek, Inspector." 207 Ind. at 504, 193 N.E. at 104. The court concluded that such writing could not reasonably be charged to the voter. *Id. See also Howell v. Blackburn* (1957), 236 Ind. 242, 139 N.E.2d 905. Therefore, it seems reasonable to conclude that the suspect initials in *Nicely* were written by the voter on the face of the ballot. Thus, *Nicely* is inapposite to the case before this court.

In *Sims v. George* (1968), 250 Ind. 595, 236 N.E.2d 820, *reh'g denied*, also cited by Hefner, the court concluded that a ballot containing too many initials on its reverse side was not improperly excluded from being counted. It is not clear from the opinion how many sets of initials were on the ballot or to whom the initials belonged. Moreover, the court in *Sims* did not disclose its reasoning for excluding that particular ballot. However, we note that the language from statutes then in effect could have compelled such a result.

For instance, Ind.Stat.Ann. § 29–4907 (Burns Supp.1967) required the circuit court clerk to affix the official seal and his signature to the ballot "leaving sufficient

---

**3.** Prior to further modification by 1991 Ind.Acts Pub.L. No. 4, § 99, effective July 1, 1991.

space on the margin of such ballot for the initials of the poll clerks." It is reasonable to infer that this language necessarily excludes all initials from the ballot but those of the poll clerks. In addition, Ind.Stat. Ann. § 29–4914 (Burns Supp.1967) required the election inspector to deliver absentee ballots to the poll clerks, "who shall at once proceed to write their initials ... in the same manner as other ballots are required to be indorsed." Ind.Stat.Ann. § 29–5012 (Burns Supp.1967) specified the required manner of indorsing regular ballots. "In any such precinct, it *shall* be necessary for *only* the two (2) clerks or assistant clerks giving out any ballot to place their initials on the back thereof...." (emphasis added). A court could easily construe these statutes as requiring no more than two sets of initials on the back of an absentee ballot. This is precisely the result obtained in the *Sims* case.

The statutes in effect at the time *Nicely* and *Sims* were decided have been superseded by subsequent enactments, most notably 1985 Ind.Acts Pub.L. No. 5, §§ 1–10, which completely revamped election procedure in Indiana. Thus, the *Nicely* and *Sims* cases are not determinative of this appeal.

■ Examining the current legislative scheme, we conclude that the questioned ballots are valid under IC 3–11–4–19 and IC 3–11–10–27, as the required seal, signature and initials are present, and not disputed by Hefner. Having already determined that the extra initials do not constitute a distinguishing mark, *supra*, we are left with the sole contention that a legislative intent to prohibit the extra initials can be gleaned from the sentence: "No other initialing of the absentee ballot is necessary." *See* IC 3–11–4–19; IC 3–11–10–27. We agree with Searson that this language does not limit the number of initials that may appear on the back of a ballot, but rather, reaffirms the threshold requirements that have been met in this case.

■ The initials on the questioned ballots were identified as belonging to either a precinct clerk or precinct board members. The undisputed evidence demonstrates that these election officials placed their initials on the back of the ballots when they were counted. The absentee voter board members properly placed their initials on the ballots in accordance with IC 3–11–10–27. Thus, even assuming placement of the extra initials was improper, the ballot was valid at the time it was cast by the voter. As our supreme court recognized:

It has always been of paramount concern when ballots are being considered, that, if the voter has fully complied with all legal requirements and placed the ballot beyond his control and he could not be in any position to protect his vote, his ballot should not be rejected for, in essence, clerical error occurring afterwards.

*Wright, supra,* at 1222. This principle should give way only when counting the ballots would ignore the clear written law on the subject and "create a situation that would authorize procedures that would frustrate the proper handling of ballots and even create methods for fraudulent mischief in the counting of votes." *Id.* at 1223. There are no such concerns raised in the case before us.

Hefner nevertheless attempts to raise a concern of impropriety by claiming that, because the First Chief Deputy of the Lake County Circuit Court could identify two absentee voters as female, the sanctity of the voting process was somehow violated. However, this claim fails to take into consideration the fact that the Deputy supervised election procedure from the clerk's office, and the record indicates that only two absentee ballots were cast at that office, rather than in front of the absentee traveling voter board. It was no invasion of the voting process for the Deputy to remember the gender of the only two absentee voters to vote in her office.

The objectives of Indiana's current election laws are as worthy and compelling as they were at the turn of the century:

It is purity of election and a free and honest expression of the voter's will that is aimed at, and a substantial compliance with the law in the execution of the ballot will suffice if the general appear-

ance of the ballot is such as clearly to indicate an honest effort by the voter to comply with the law, and his choice of candidates may be clearly ascertained. *Borders v. Williams* (1900), 155 Ind. 36, 43, 57 N.E. 527, 529. Inasmuch as the procedures employed by election officials were in compliance with relevant laws, we conclude that neither goal has been sacrificed in this case.

Accordingly, the judgment of the trial court is affirmed.

HOFFMAN and MILLER, JJ., concur.