**Norman D. HATHCOAT, Appellant–Defendant,**

v.

**TOWN OF PENDLETON ELECTION BOARD, and Stephen R. Poor, Appellees–Plaintiffs.**

No. 48A02–9205–CV–237.

Court of Appeals of Indiana,
Second District.

Nov. 22, 1993.

Michael C. Lacey, Miller, Hulse, Lacey, Hardacre, Austin & Shine, P.C., Anderson, for appellant-defendant.

Thomas J. Broderick, Anderson, for appellees-plaintiffs.

SULLIVAN, Judge.

Norman D. Hathcoat appeals the judgment of the Madison Circuit Court in an election recount proceeding with respect to votes cast in the Town of Pendleton. We consolidate and restate the issues for review as follows: Whether the trial court erred in failing to ascertain the voters' intent concerning controverted write-in votes for Hathcoat and in finding the controverted votes void and therefore disallowed in the final vote count.[1]

We affirm.

Norman D. Hathcoat was the only qualified write-in candidate for the office of Town Council Member, Third Ward, in the Town of Pendleton general election on November 5, 1991.[2] Stephen R. Poor, the Democratic candidate, was Hathcoat's sole opponent. The Town of Pendleton Election Board certified that Poor received 180 votes and that Hathcoat received 172 votes. Hathcoat petitioned for a recount. The

---

**1.** Poor first asserted cross-error in his appellee's brief. In recount contests a cross-appeal is properly initiated by filing either a motion to correct errors pursuant to Ind.Trial Rule 59 *or* by filing a praecipe which specifies the cross-error presented by the appellee. Ind.Appellate Rule 7.2(D). Based upon our resolution of the issues presented, we need not decide whether a Request for Certification and Transmission of Remaining Controverted Ballots, (Record at

540–41), absent specific articulation of cross-error as contemplated by App.R. 7.2(D), preserved Poor's right to assert cross-error.

**2.** There were no other declared write-in candidates for any office in the town election. In fact, the only slate of candidates in this election represented the Democratic party. No Republican candidates sought office.

Recount Commission certified 196 votes for Hathcoat and 180 votes for Poor. Pursuant to Indiana Code 3–12–6–22.5 (Burns Code Ed.1993), Poor appealed the recount certification to the Madison Circuit Court. The trial court examined each paper ballot. The trial court found that Poor received 165 votes and that Hathcoat received 157 votes. Hathcoat appeals the trial court's judgment declaring Poor the winner.

■ This appeal presents a question of first impression concerning write-in voting.[3] In reviewing the controverted votes, we are not bound by the limitations generally placed upon appellate courts. Rather, we may weigh the evidence and render a judgment accordingly because the original ballots are properly included in the record before us. *Hughes v. Brooks* (1992) 5th Dist.Ind.App., 597 N.E.2d 998.

■ Indiana's voting laws ensure the freedom and equality of the electoral process guaranteed by the Indiana Constitution. To the extent voting statutes guard against fraud, undue influence, or oppression and serve to preserve the integrity of the electoral process without unreasonably restricting access to the ballot box, we must uphold them. *Hefner v. Searson* (1992) 3d Dist.Ind.App., 590 N.E.2d 1081, 1085 (citing the long-standing objectives announced in *Borders v. Williams* (1900) 155 Ind. 36, 43, 57 N.E. 527, 529). In 1991, the Indiana Legislature expanded the voting options available to the general electorate by permitting and facilitating write-in voting.[4]

Casting a write-in vote is a two-step process. The voter must make a voting mark[5] on or in the square immediately before the write-in voting space. I.C. 3–11–11–7(b). The voter must also print the candidate's name in the space provided for write-in voting. *Id.* These requirements for casting write-in votes appeared on the face of each paper ballot which Hathcoat contests.[6]

Indiana Code 3–12–1–1.7 clarifies the rules for counting write-in votes. For example, a vote cast for a declared write-in candidate is not invalidated by an abbreviation, a misspelling, or other minor variation in the form of the candidate's name if the voter's intent is ascertainable. I.C. 3–12–1–1.7(a)(4).[7] Although Section 1.7 does not address the voting mark requirement, other rules indicate that a voting mark touching a square shall be counted as if it were placed upon the square. I.C. 3–12–1–9. If a voting mark does not touch upon or is not in or upon the square, the vote may not be counted. *Id.* Here, the *absence* of the voting mark is the root of the problem.

■ Hathcoat asserts that thirty-five ballots upon which his name appeared in the appropriate write-in voting space should be counted for him despite the fact that the voters did not place a voting mark

---

**3.** The statutes relevant to this appeal include: I.C. 3–11–11–7(b) (Burns Code Ed.1993) (casting write-in votes); I.C. 3–12–1–1 (Burns Code Ed. 1993) (voter's intent); I.C. 3–12–1–1.7 (Burns Code Ed.1993) (counting write-in votes); and I.C. 3–12–1–5, –9 (Burns Code Ed.1993) (voting mark requirement).

**4.** Indiana Acts 1991, P.L. No. 4, § 102, was prompted by federal mandate. *Paul v. State of Indiana Election Board* (1990) S.D.Ind., 743 F.Supp. 616.

**5.** A "voting mark" is a cross mark ("X") or a check mark. I.C. 3–5–2–51 (Burns Code Ed. 1993).

**6.** Each official ballot instructed:
"A straight party ticket may not be voted fo[r] write-in candidates. To cast a vote for a write-in candidate, make a voting mark ["X" or "check mark"] in the square to the left of the line for write-in voting and print the name of the candidate on the line for write-in voting." Record at 95.

**7.** We need not decide, although Poor conceded as much at oral argument, whether write-in votes cast, e.g., for "Norm Hathcoate," "Norm Hathcoat," or "N. Hathcoat" were misspellings or abbreviations. *Nor do we reach the question* whether a voter may use cursive-style writing instead of printing when casting a write-in vote. We merely note, as Hathcoat conceded at oral argument, that the paper ballots used in this election as well as the write-in voting statutes instruct the voter to *print* the candidate's name.

in or upon the appropriate square. Poor counters that a vote is not *cast* until the voter places a voting mark (by "X" or "check mark") in or upon the square beside the candidate's name. Hathcoat seeks a liberal construction of the write-in voting statutes and urges this court to elevate the ascertainment of voter's intent [8] over the requirement that a voter place a voting mark before the write-in candidate's name.

Placing an "X" upon the ballot is not merely a threshold requirement of the newly-enacted write-in voting statutes, but has long been held to constitute an act of legal significance. *See, e.g. Lewis v. State ex rel. Marley* (1915) 184 Ind. 99, 109 N.E. 777. This seemingly mundane task, however, has been a repeated source of controversy. A recurrent question before reviewing courts is whether a particular voting mark establishes a valid vote.

For example, in *Lorch v. Lohmeyer* (1969) 252 Ind. 182, 247 N.E.2d 61, our Supreme Court addressed the question whether a voting mark was valid if imperfectly or inartfully made due to the voter's unsteady hand or faulty pen. The Court ascribed to the general philosophy that, unless an intentional dishonest purpose is shown, an irregularity in the voting mark will not invalidate the vote "where markings are in the proper place, and there is an effort to make the statutory crossmark...." *Id.* 247 N.E.2d at 66. Such voting marks will be upheld as valid where deviating from the textbook "X" is more susceptible of poor penmanship than of deceit or indecisiveness. *Id.* at 66–67. *See also Dobbyn v. Rogers* (1948) 225 Ind. 525, 76 N.E.2d 570.

It is apparent that the legislature not only contemplated, but also provided for, minor variations in the manner in which write-in votes may be validly cast. *See, e.g.,* I.C. 3–12–1–1; –1.7, –7.5, –12. In so doing, and by reiterating that voter intent be ascertained when possible, the legislature devised a write-in voting scheme encompassing the broadest range of voter participation. Be that as it may, we do not equate this accommodation with an abrogation of the general rule.

 Clearly, a write-in vote must include both a voting mark as well as the write-in candidate's name. I.C. 3–11–11–7(b). The voter must put forth a good faith effort to place the mark *and* print the name in the appropriate place. Once this is accomplished, the vote has been cast. Thereafter, should minor variations in the voting mark or candidate's name be challenged, the rules for ascertaining intent apply.[9] The purpose of strict adherence to the general rule, especially within the context of elections, is to ensure the integrity of the process and to give effect to the will of the people. *Lorch, supra.*

We admit, as did the trial court, that the contested votes arguably were intended to be cast in Hathcoat's favor. But the fact remains that without the voting mark, ascertaining the voter's intent is an exercise in futility. The voters in the Town of Pendleton Election were forewarned *at the time they cast their vote* to place a voting mark beside Hathcoat's name. Making a voting mark is not a particularly novel requirement—in fact, each of the contested ballots bore such marks beside the preprinted names of candidates. Neither can we say that the statutory requirements for casting write-in votes are unreasonable. *Hefner, supra.* Thus, we find, as did the trial court, that only ballots bearing a vot-

---

8. The relevant portion of I.C. 3–12–1–1 provides that "the primary factor to be considered in determining a voter's choice on a ballot is the intent of the voter." If intent can be determined, the vote shall count; conversely, if it is impossible to determine the voter's choice of candidate, the vote may not be counted. *Id.*

9. Even under a generous interpretation of I.C. 3–12–1–1.7(a)(4) (suggesting minor variations of a candidate's name), the names "Tom Heathcoat" and "Ron Hathcoat" are significantly dissimilar and could not constitute votes for Hathcoat.

ing mark *and* a reasonable rendition of Hathcoat's name may be counted for Hathcoat.

The judgment of the trial court declaring Stephen R. Poor the duly-elected Town Council Member, Third Ward, in the Town of Pendleton general election on November 5, 1991, is affirmed.

SHIELDS and MILLER, JJ., concur.